**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARGARET BETTS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| SIXTY LOWER EAST SIDE, LLC, | ) | |
| 206 Spring Street | ) | |
| 4th Floor | ) | |
| New York, New York 10012 | ) | |
| | ) | |
| *and*, | ) | |
| | ) | |
| SIXTY HOTELS, LLC, | ) | **JURY TRIAL DEMANDED** |
| 206 Spring Street | ) | |
| 4th Floor | ) | |
| New York, New York 10012 | ) | |
| | ) | |
| *and*, | ) | |
| | ) | |
| SIXTY HOTEL MANAGER, LLC, | ) | |
| 206 Spring Street | ) | |
| 4th Floor | ) | |
| New York, New York 10012, | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff Margaret Betts states as follows in support of her Complaint against Defendants Sixty Lower East Side, LLC ("Sixty LES"), Sixty Hotels, LLC, and Sixty Hotel Manager, LLC (collectively, "Defendants").

### NATURE OF THE CASE

1.      This suit arises from the sexual assault of Margaret Betts during her stay as a guest at Sixty LES hotel by a massage therapist that Sixty LES selected, hired, and sent to her hotel room without verifying his credentials, performing a background check, *or even knowing his name*. Following this sexual assault at its hotel, Sixty LES ignored Ms. Betts' report of the assault,

repeatedly lied to Ms. Betts about taking action in response to this crime, and refused to fully cooperate with the New York Police Department's investigation of the sexual assault. Sixty LES's conduct caused Ms. Betts severe physical, emotional, and mental anguish.

2.      After arriving at Sixty LES on October 19, 2018, Ms. Betts called the hotel concierge and requested an appointment at the hotel spa for a massage. Instead of booking her massage at the spa, the Sixty LES concierge informed Ms. Betts that the hotel would send a massage therapist to her room. Shortly thereafter, a massage therapist arrived at Ms. Betts' room. The massage therapist then repeatedly sexually assaulted Ms. Betts, who was unclothed, vulnerable, and unable to resist for fear that the assault would become more violent. When the massage therapist finally left Ms. Betts' room, Ms. Betts' immediately informed a friend that she had been sexually assaulted. Ms. Betts' friend then called another friend to help Ms. Betts cope with the emotional and psychological trauma brought on by her assault.

3.      Shortly after returning to the safety of her home, Ms. Betts reported her sexual assault to the New York Police Department and to Sixty LES.

4.      Sixty LES management disregarded Ms. Betts' report of her sexual assault, telling her that Sixty LES identified the responsible employee and would no longer allow him to provide massages to guests. That was a lie. In conversations with the NYPD, Sixty LES admitted that it had no idea who it sent to Ms. Betts' room for her massage. Upon information and belief, Sixty LES has since refused to cooperate with the NYPD's investigation into Ms. Betts' sexual assault.

5.      Through her own investigation, Ms. Betts discovered that Sixty LES claims it hires its in-room massage therapists on an as-needed basis. Sixty LES took no steps to investigate the massage therapist it hired to provide Ms. Betts' massage—or even learn his name—before

providing him with access to Ms. Betts' room.  Had Ms. Betts known any of these facts on October

19, 2018, she would never have allowed the massage therapist into her room.

6.      Like thousands of guests each year, Ms. Betts entrusted her safety to Sixty LES,

relying on the hotel to provide her with safe and secure accommodations during her stay.  Sixty

LES's reckless disregard for Ms. Betts' safety betrayed that trust.  Had Sixty LES acted in

accordance with its duties under New York law, Ms. Betts would have been spared the physical

and emotional trauma caused by her sexual assault.

7.      As a result of Defendants' tortious conduct—including Defendants' total failure to

conduct reasonable investigation into their massage therapists' backgrounds prior to providing

those massage therapists with access to vulnerable guests and the egregious and callous handling

of Ms. Betts' allegations of sexual assault by Defendants—Ms. Betts sustained serious physical,

mental, and emotional injuries.

8.      Ms. Betts files this suit not only to vindicate her own rights and take back the

agency that was stolen from her by Defendants' conduct, but also to vindicate the rights of

countless other women who have had their safety put at risk by Defendants' callous and willful

disregard for proper screening of its massage therapists. Ms. Betts hopes that her suit will shine a

light on the serious security flaws at Sixty LES and help prevent future sexual assaults on the

Defendants' watch.

### PARTIES, JURISDICTION AND VENUE

9.      Plaintiff Margaret Betts is a resident and citizen of the State of Illinois.

10.     Defendant Sixty Lower East Side, LLC is, and at all times material hereto has been,

a Delaware Corporation duly organized and registered to transact business in the State of New

York, and with a Principal Place of Business at 206 Spring Street, 4th Floor, New York, New York 10012.

11.     Defendant Sixty Hotels, LLC is, and at all times material hereto has been, a Delaware Corporation duly organized and registered to transact business in the State of New York, and with a Principal Place of Business at 206 Spring Street, 4th Floor, New York, New York 10012.

12.     Defendant Sixty Hotel Manager, LLC is, and at all times material hereto has been, a New York Corporation with a Principal Place of Business at 206 Spring Street, 4th Floor, New York, New York 10012.

13.     This Court has subject matter jurisdiction of this civil action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Ms. Betts and the Defendants, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     Venue properly lies in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Ms. Betts claims occurred in this judicial district.

## BACKGROUND FACTS

### THE RELATIONSHIP BETWEEN THE DEFENDANTS

15.     At all times material hereto, Defendants owned, operated, leased, possessed, maintained, or controlled the property known as Sixty LES Hotel at 190 Allen St., New York, New York 10002 ("Sixty LES").

16.     Sixty LES Hotel is marketed to the public as a first-class, luxury hotel with extravagant rooms, suites, and a penthouse loft. Suites and the penthouse loft at Sixty LES cost upwards of $1,800 to $2,300 per night.

- 4 -

17.     Among the "luxury" amenities offered to guests at Sixty LES is a spa, with the option for in-room massages.  On its website, Sixty LES advertises spa services exclusively to hotel guests stating, "[a]dditional relaxation and inner harmony awaits at The Spa, where personal havens fuse ambiance and the marked Sixty service."  Sixty LES's spa services are available both in "The Spa" and in-room.

18.     In order to book in-room massage services at Sixty LES, guests request an appointment through the hotel concierge. Guests, including Ms. Betts, are charged for Sixty LES's in-room massage services through their hotel bill.

19.     Unbeknownst to guests, including Ms. Betts, Sixty LES claims to hire its in-room massage therapists on an as-needed basis, rather than providing a massage therapist from The Spa.

20.     Sixty LES has been unwilling and/or unable to confirm the identity of its massage therapist that it sent to Ms. Betts' room ("John Doe").

21.     Prior to employing John Doe to provide massage services to hotel guests, including Ms. Betts, Sixty LES conducted *no* investigation into John Doe's professional certifications or criminal history.  In fact, as described below, Sixty LES did not even know John Doe's identity.

22.     Despite its complete failure to conduct any investigation into John Doe, Sixty LES selected and hired John Doe for Ms. Betts' in-room massage and presented him to Ms. Betts as a licensed massage therapist who they could trust to provide professional massage services.  In fact, Sixty LES recommended, arranged, and facilitated John Doe's access to Ms. Betts in her room despite Ms. Betts' initial request for an appointment in The Spa.

23.     Sixty LES knew or should have known that massage therapists often interact with guests while they are alone and are partially or completely unclothed and that the failure to properly

investigate the background of a purported massage therapist before allowing him access to Ms.

Betts' room could expose Ms. Betts to a serious risk of harm, including sexual assault.

<u>**THE SEXUAL ASSAULT**</u>

24.    On October 19, 2018, Ms. Betts arrived at Sixty LES with a friend for a two-night

stay in the hotel's premium loft penthouse.

25.    Once in her room, Ms. Betts called the hotel concierge and asked to book a massage

at The Spa.   The concierge informed Ms. Betts that the hotel would send one of their massage

therapists to her room to provide an in-room massage so that she did not have to go to The Spa.

26.    Ms. Betts has received dozens of safe and professional massages in her life, both in

spas and via in-room services, and because of this life experience she did not object to the

concierge sending a hotel massage therapist to her suite.

27.    Neither the concierge nor any other Sixty LES employee informed Ms. Betts that

in-room massages were provided by massage therapists that Sixty LES claims it employs on an

as-needed basis.  Ms. Betts believed that the in-room massage therapist that Sixty LES sent to her

room was a full-time employee from The Spa.

28.    As she had done with other hotels in the past, Ms. Betts relied on Sixty LES to

provide her with a licensed massage therapist who she could trust to perform a safe and

professional massage while she was unclothed and vulnerable.

29.    A short time after her conversation with the hotel concierge Sixty LES directed

John Doe to Ms. Betts' suite.  John Doe arrived at Ms. Betts' suite and informed her that he was

the massage therapist from the hotel.

30.     Trusting that John Doe had been adequately vetted and supervised by Sixty LES, Ms. Betts allowed him entry into her room.  John Doe brought Ms. Betts to a room in the back of her suite, where the two were alone, and set up a massage table.

31.     John Doe did not confer with Ms. Betts over the type of massage she desired and instead began performing the massage.  At some point during the massage, Ms. Betts fell asleep.

32.     Shortly thereafter, Ms. Betts awakened to John Doe repeatedly inserting two fingers into her vagina.  Paralyzed with terror, Ms. Betts was unable to object or to call out for help.  Ms. Betts feared that if she attempted to stop John Doe from touching her, he would become violent.

33.     While Ms. Betts lay unclothed on the massage table, John Doe—who was significantly larger and stronger than her—repeatedly inserted his fingers into her vagina and pinched and fondled her breasts.

34.     John Doe took advantage of the trust that is typically conveyed between massage therapists and their clients to place Ms. Betts in a vulnerable position where she would be unable to object to his repeated, improper, and nonconsensual sexual contact.

35.     After John Doe left her room, Ms. Betts informed her friend that he sexually assaulted her.  Ms. Betts' friend then called a second friend to help Ms. Betts cope with the emotional trauma of the assault she just experienced.

## POLICE INVESTIGATION

36.     After Ms. Betts returned home, she reported her sexual assault to the New York Police Department by calling its sexual assault hotline.

37.     Ms. Betts fully cooperated with the NYPD's subsequent investigation—including participating in interviews with NYPD detectives and participating in a photo line-up.

38.     As of the date of this filing, the NYPD investigation into Ms. Betts' assault is ongoing, but upon information and belief, her attacker has not yet been located.

SIXTY LES'S "INVESTIGATION"

39.     In addition to reporting her sexual assault to the police, after returning home and discussing her sexual assault with her healthcare providers, Ms. Betts called Sixty LES to report the assault.  Ms. Betts spoke with an employee of Sixty LES who identified themselves as the most senior manager of the hotel.   Ms. Betts informed the employee that she had been repeatedly sexually assaulted by John Doe during her massage and requested that Sixty LES take immediate action to investigate and protect other guests from the perpetrator.  The employee brushed off Ms. Betts' complaint and simply thanked her for sharing the information.

40.     Days later, a Sixty LES employee called Ms. Betts to inform her that the hotel cancelled all of John Doe's future appointments (which turned out to be untrue) and told Ms. Betts that it concluded its investigation into her sexual assault.

41.     In November of 2018, through counsel, Ms. Betts contacted Sixty LES requesting information concerning the identity of John Doe.  Sixty LES refused to provide any information concerning John Doe—even his name—to Ms. Betts, the victim of his sexual assault.  Instead, Sixty LES said that it had provided John Doe's information to the New York Police Department and directed Ms. Betts' counsel to contact them.  Though Sixty LES promised to collect additional information and contact Ms. Betts, it failed to do so and only responded to Ms. Betts' attorney when he threatened litigation due to Sixty LES's lack of response.

42.     In subsequent communications with the New York Police Department, Ms. Betts learned that Sixty LES refused to cooperate with the criminal investigation into her sexual assault. Despite informing Ms. Betts that it knew the identity of John Doe and took steps to insure that he

could no longer provide massages to hotel customers, Sixty LES told the Police that it *did not know the identity of its massage therapist that assaulted Ms. Betts*, contrary to the prior statement by Sixty LES that it had provided his identity to the police.

43.     Upon information and belief, Sixty LES's misrepresentations concerning the nature and scope of its investigation into the sexual assault and John Doe were aimed at limiting its own liability to Ms. Betts by concealing its failure to adequately screen John Doe before hiring him and sending him to Ms. Betts in her hotel room.

### IMPACT OF THE ASSAULT ON MS. BETTS' HEALTH AND WELLBEING

44.     As a result of her sexual assault, Ms. Betts suffered serious physical, emotional, and mental trauma requiring professional medical treatment including, but not limited to, post-traumatic stress disorder, physical injuries, pain and suffering, severe and debilitating mental distress, physical and mental trauma, shock, numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, sleeplessness, flashbacks, diminished interest in travel and other pre-trauma activities, disruption to her normal routines, interference with personal relationships, anger, and depression.

45.     Since her sexual assault, Ms. Betts has also experienced ongoing fear, isolation, flashbacks, distrustfulness, and other mental and emotional distress, which caused her withdraw from her normal routines and relationships.  For example, following the assault, Ms. Betts was unable to work on her previous schedule and pulled away from many personal relationships due to her mental and emotional distress.

46.     Ms. Betts has seen a psychiatrist for this ongoing and severe mental and emotional trauma since her sexual assault.  Ms. Betts' therapist diagnosed Ms. Betts with post-traumatic stress disorder caused by the assault.

47.     Ms. Betts also incurred significant additional monetary expenses related to this incident, including significant costs to undertake her own investigation into the identity of John Doe and to work with the NYPD investigation into her assault.

48.     Furthermore, Ms. Betts was repeatedly re-victimized by the Defendants' callous and indifferent response to her report of sexual assault.  Instead of mounting a serious investigation into the perpetrators of the assault to prevent harm to future guests, Sixty LES's employees repeatedly lied to Ms. Betts, assuring her that they were taking action when they were in fact attempting to sweep the incident under the rug.  While Sixty LES was telling Ms. Betts that they had identified her attacker and taken steps to protect other guests, it was simultaneously telling police that it did not know the attacker's identity.  Upon discovery that Sixty LES again betrayed her trust, Ms. Betts was forced to relive the trauma of her assault as she attempted to get Sixty LES to properly investigate this incident—and conduct her on investigation—to prevent other women from becoming victims of John Doe.  As a result, Ms Betts' mental anguish, pain and suffering has been exacerbated and prolonged.

**COUNT I**
**(Negligence)**

49.     The allegations of Paragraphs 1 through 48 are incorporated by reference with the same force and effect as if set forth in fully herein.

50.     At all times relevant to this matter, Ms. Betts was a paying guest or invitee of Sixty LES.

51.     Sixty LES is a hotel property owned, operated, leased, possessed, maintained, and/or controlled by Defendants.

52.     Ms. Betts was sexually assaulted on the premises of Sixty LES, during business hours, by a massage therapist employed by Sixty LES, who was allowed access to her room by nature of the credentials and recommendation provided by Sixty LES and its employees.

53.     In providing massage services to Ms. Betts, John Doe was acting as the servant and agent of Defendants.  John Doe was hired through Sixty LES to provide a single service to Ms. Betts as a hotel guest.  Defendants tendered the services of John Doe with the expectation of monetary compensation from Ms. Betts and provided John Doe with access to both the hotel and to Ms. Betts' hotel room.

54.     When he sexually assaulted Ms. Betts during her massage, John Doe was acting within the scope of the authority given to him by Defendants.

55.     Without such authority, Ms. Betts would not have allowed John Doe to enter her hotel room or provide her with massage services, and John Doe would not have been able to injure her.

56.     Defendants, as innkeepers of a luxury, 4-star hotel, had a duty to exercise a high degree of care to protect their patron, Ms. Betts, from all criminal acts of their employees regardless of whether those acts were foreseeable.

57.     In addition, Defendants had a duty to exercise reasonable case to protect their patron, Ms. Betts, from the reasonably foreseeable criminal acts of third parties.

58.     Defendants breached their duty to protect Ms. Betts from criminal acts by, among other things:

        a.      Failing to ascertain the identity of John Doe prior to hiring him to interact with Ms. Betts while she was unclothed, alone, and vulnerable.

b.      Hiring John Doe to provide massage services to Ms. Betts in her hotel suite without first investigating his certifications or criminal history or otherwise screening John Doe in any way.

c.      Recommending, hiring, and allowing John Doe to provide massage services to Ms. Betts in her hotel suite without first informing Ms. Betts that John Doe's identity was unknown and that Sixty LES had not investigated his certifications or criminal history.

d.      Falsely assuring Ms. Betts that hotel spa services could be safely provided in-room.

e.      Providing John Doe with unsupervised access to Ms. Betts' suite to perform hotel spa services.

f.      Failing to ensure that reasonable and prudent policies and procedures were put into place for screening Sixty LES's in-room massage therapists, ascertaining the identity of in-room massage therapists employed by the hotel, and investigating claims of sexual assault on hotel guests by Sixty LES's massage therapists, including polices that would insure that any employee or agent of the hotel that perpetrates a sexual assault could be identified.

59.    Ms. Betts' sexual assault was the foreseeable consequence of Defendants' failure to exercise the requisite standard of care.  Defendants knew or should have known that the negligent behavior described in the prior paragraph would put Ms. Betts at risk of criminal acts, including sexual assault.

60.    As a direct and proximate result of Defendants' failure to exercise reasonable care, Ms. Betts was sexually assaulted by Defendants' agent, John Doe, and sustained physical and

mental injuries, including pain and suffering and severe and debilitating mental anguish and emotional distress.

WHEREFORE, Plaintiff Margaret Betts respectfully requests that the Court enter a judgment against Defendants Sixty Lower East Side, LLC, Sixty Hotels, LLC, and Sixty Hotel Manager, LLC for compensatory damages, punitive damages, costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**MARGARET BETTS,**

By:  /s/ Anne M. Milgram
        One of Her Attorneys

Anne M. Milgram
Jamie Gottlieb Furia
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700
amilgram@lowenstein.com
jfuria@lowenstein.com

Renato Mariotti
Holly H. Campbell
THOMPSON COBURN LLP
55 East Monroe St., 37th Floor
Chicago, Illinois 60603
(312) 346-7500
rmariotti@thompsoncoburn.com
hcampbell@thompsoncoburn.com