UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

MARGARET BETTS,

                        Plaintiff,

                                                **MEMORANDUM AND ORDER**

                - against -

                                                 20 Civ. 4772 (NRB)

SIXTY LOWER EAST SIDE, LLC, SIXTY HOTELS,
LLC, and SIXTY HOTEL MANAGER, LLC,

                        Defendants.

---------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


       This case arises from the alleged sexual assault of plaintiff Margaret Betts ("plaintiff" or "Betts") by a massage therapist during plaintiff's in-room massage appointment at Sixty LES hotel (the "hotel") on October 19, 2018.  At the time of plaintiff's assault, the alleged assailant, Iouri Astakhov, was not registered or otherwise authorized to practice massage therapy in New York. While the hotel did not employ Astakhov or any of the other massage therapists it used to fulfill its guests' appointment requests, it advertised massage services on its spa menu, which was placed in all hotel rooms; arranged guests' appointments; and handled payment to the massage therapists it used.

       On June 22, 2020, plaintiff filed this negligence action against defendants Sixty Lower East Side, LLC; Sixty Hotels, LLC; and Sixty Hotel Manager, LLC (collectively, "defendants"), seeking

monetary damages for the physical and emotional injuries she suffered as a result of the assault.  See ECF No. 1 ("Compl.").  Presently before the Court are the parties' cross-motions for summary judgment on the issue of liability.  See ECF Nos. 59 ("Pl. Br."); 64 ("Def. Br.").  For the reasons set forth below, plaintiff's motion for partial summary judgment, which asserts multiple theories of negligence per se, is granted in part and denied in part, and defendants' motion for summary judgment is denied in its entirety.

## BACKGROUND

The following facts are undisputed, unless otherwise noted.[1] They are drawn from plaintiff's Local Civil Rule 56.1 statement ("Pl. 56.1"), ECF No. 57; defendants' Local Civil Rule 56.1 counterstatement ("Def. Counter 56.1"), ECF No. 62; defendants' Local Civil Rule 56.1 statement ("Def. 56.1"), ECF No. 63-1; plaintiff's Local Civil Rule 56.1 counterstatement ("Pl. Counter 56.1"), ECF No. 66-1; and admissible materials submitted by the parties in connection with the present motions.[2]

---

[1] Pursuant to Local Civil Rule 56.1, the Court treats as admitted the facts set forth in the Rule 56.1 statements unless "specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civil Rule 56.1(c).  In addition, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible."  Local Civil Rule 56.1(d).

[2] In support of her motion for summary judgment, plaintiff submitted the expert report and affidavit of Lloyd Williams, see ECF Nos. 58-2, 58-3, who describes himself as a "[r]espected hotelier," ECF No. 58-2 at 8.  Williams' report focuses on the hotel's alleged departure from the standard for safety and

## A. Factual Background

### 1. The Parties

Plaintiff is a resident of Illinois.  <u>See</u> Compl. ¶ 9.  From October 19, 2018 to October 21, 2018, she was a registered guest at Sixty LES, a luxury hotel located in New York, New York.  <u>See</u> Def. 56.1 ¶¶ 10, 37; Pl. Counter 56.1 ¶ 10, 37.  Plaintiff stayed in the hotel's penthouse suite, which cost her $1,500 per night, before taxes and fees.  <u>See</u> Pl. 56.1 ¶ 31; Def. Counter 56.1 ¶ 31; ECF No. 58-16 at 2.

At the time of plaintiff's stay, the hotel was owned by defendant Sixty Lower East Side, LLC and managed by defendant Sixty Hotels, LLC.  <u>See</u> Def. 56.1 ¶¶ 1, 2; Pl. Counter 56.1 ¶¶ 1, 2. Defendants allege that defendant Sixty Hotel Manager, LLC "did not own, operate, control, manage or have any other involvement in the hotel" on October 19, 2018.  Def. 56.1 ¶ 3.  However, defendants do not cite to any evidence supporting that allegation or otherwise move to dismiss Sixty Hotel Manager, LLC as an improperly joined party.  <u>See</u> Pl. Counter. 56.1 ¶ 3.

---

security measures in the hotel industry.  <u>See</u> ECF No. 58-2 at 2.  In their opposition to plaintiff's motion for summary judgment, defendants argue that Williams's testimony should be excluded under <u>Daubert</u>.  <u>See</u> ECF No. 60 ("Def. Opp.") at 7-13.  On reply, plaintiff suggests that, "to simplify consideration of the motion, the Court should set aside" the sections of her motion that reference Williams's report and affidavit, "thereby mooting the extensive objections set forth by the Hotel."  ECF No. 65 ("Pl. Reply") at 6-7.  Because Williams' testimony does not need to be considered in order to resolve the parties cross-motions for summary judgment, the Court need not rule on defendants' <u>Daubert</u> objection.

**2. Spa Services Offered at the Hotel**

At the time of plaintiff's stay, the hotel had an on-premises spa, which was "available exclusively to hotel guests." See ECF Nos. 58-5 at 11-12; 63-10 (the "Spa Menu," available in Appendix A). The hotel placed a spa menu in all rooms at the hotel,[3] see Pl. 56.1 ¶ 7; Def. Counter 56.1 ¶ 7, which described the spa as follows:

> Tucked beneath the lobby of SIXTY LES, The SPA at SIXTY LES is a 1,200 square foot oasis of renewal and relaxation available exclusively to hotel guests. Our spa and fitness areas combine aspects of privacy and modern luxury. Complimentary fitness and sauna facilities are available 24 hours a day, seven days a week. Advance reservations, via our concierge team, are required to secure spa services in our single spa treatment room.

Spa Menu at 2.  However, "the actual treatment room, the private treatment room, with the massage table . . . was small" and could only fit one massage table.  ECF Nos. 58-7, 61-2, 63-12 ("Edwards Depo.") at 27:6-8; see also ECF No. 58-14 ("Villanueva Depo.") at 19:1-14.  As a result, massages were offered and often provided in hotel rooms, which were more spacious than the spa.  See e.g., Spa Menu at 2 (stating that a "customized massage" is "[a]lso available

---

[3] In their 56.1 statements, both parties stipulated that the spa menu was placed in all hotel rooms, see Pl. 56.1 ¶ 7; Def. Counter 56.1 ¶ 7, and quoted language from the spa menu, see Pl. 56.1 ¶ 7; Def. 56.1 ¶ 13; ECF No. 58-5 ¶ 52.  However, plaintiff also argues, without citing any evidence, that defendants have failed to offer "admissible evidence from a witness with personal knowledge of [whether the spa menu] was in [plaintiff's hotel] room on Oct. 19, 2018."  Pl. Counter 56.1 ¶ 13.  The Court rejects plaintiff's unsupported allegation as it is exceedingly unlikely that the spa menu was placed in all rooms except for plaintiff's room.

in [the guest's] room"); Edwards Depo. at 24:3-14 (noting that "there was actually no space to do" couples massages at the spa so couples massages could "only be done if the[] [guests] were staying in a room that was large enough to have the two tables"); ECF No. 58-13 ("Stuart Depo.") at 15:1-8 (explaining that massages could be arranged in guests' rooms).

The spa was not staffed by any hotel employees. <u>See</u> Pl. 56.1 ¶ 9; Def. Counter 56.1 ¶ 9; Edwards Depo. at 16:25-17:3. Instead, all massage services were provided by "independent professionals." Spa Menu at 3; <u>see also</u> Pl. 56.1 ¶ 9; Def. Counter 56.1 ¶ 9; Edwards Depo. at 16:25-17:3. The spa menu states that the hotel "consult[s] with independent professionals who specialize in mobile spa treatments" for "spa services available in [guests'] room[s]," but does not clarify whether "independent professionals" are also used for appointments provided at the hotel's spa. Spa Menu at 3.[4]

At his deposition, Ben Edwards, a concierge at the hotel, explained that, whenever he received a massage appointment request from a hotel guest, he would fulfill the request by contacting a provider on the hotel's internal "list of preferred massage

---

[4] The Court is aware that the second page of the spa menu instructs guests to "[s]chedule spa appointments at least one hour prior to [their] arrival . . . to avoid disappointment [as] [t]herapists are called to the hotel upon [their] request." Spa Menu at 3. However, that instruction does not clarify that massage therapists are called to the hotel for all massage appointments, not only in-room massage appointments.

therapists." See Edwards Depo. at 31:3-4.  Edwards stated that, in late 2018, he was told to collect massage therapy licenses for the massage therapists included on that list but stopped the collection process after obtaining only a few licenses because the hotel decided to use a massage service known as "Nomi."  Edwards Depo. at 38:7-14; 45:6-17; see also Def. 56.1 ¶ 45.

The hotel did not conduct background checks on the massage therapists they used.  See Def. Br. at 13-15; see also ECF No. 58-9 ("Grother Depo.") at 28:9-16, 37:3-17 (stating that the hotel sometimes "hir[ed] vendors or independent contractors for massage services" after merely "looking them up either on the Web or through some sort of third party to find someone that might be able to fill the services" and that he was "not aware of any" "background checks on massage therapists sent to Sixty LES").

Once a massage was completed, the massage therapist would sign a slip confirming the massage was finished and a front-end hotel employee would pay the massage therapist.  See Def. 56.1 ¶ 47; ECF No. 61-2 at 56:15-57:10.  The cost of the massage would then be added to the guest's hotel bill.  See Spa Menu at 3.

### 3. Plaintiff's Request for a Massage Appointment

"At approximately 7:00 p.m. on October 19, 2018, [] [p]laintiff requested an [immediate] in-room massage via a telephone call to the front desk of [] [d]efendant[s'] Hotel." Def. 56.1 ¶¶ 12, 15; Pl. Counter 56.1 ¶¶ 12, 15.  Samara Fares,

the front desk agent who received plaintiff's call, stated at her deposition that, in response to plaintiff's request, she asked plaintiff "the general questions . . . like what time, what type of massage she would like, and then preference on male or female." ECF No. 58-8 ("Fares Depo.") at 29:10-14.  She did not tell plaintiff that an outside professional would be used.[5]   Id. at 31:1-8.

"Hotel staff [then] contacted Valeria Vasilets, who at that time was an independent contractor" included on the hotel's list of preferred massage therapists.  Def. 56.1 ¶ 14; Pl. Counter 56.1 ¶ 14; see also ECF No. 63-11 ("Vasilets Depo.") at 14:16-24. Vasilets was unable to handle plaintiff's request, so she called Astakhov to see if he was available.  See Def. 56.1 ¶ 17; Vasilets Depo. at 24:3-14.  Astakhov agreed to provide the massage.  See id.

**4. Iouri Astakhov**

At her deposition, Vasilets stated that, prior to October 19, 2018, she had previously performed couples' massages with Astakhov.  See Def. 56.1 ¶ 16; Vasilets Depo. at 22:9-24:14.  She described his work as "good" and "successful[]."  Vasilets Depo. at 23:2, 23:8-13, 24:5-6.  Vasilets also stated that, when she

---

[5] Defendants allege that the "concierge had a practice of advising guests who wanted an immediate appointment that the Spa was unstaffed and that the hotel used outside massage therapists."  Def. 56.1 ¶ 15.  However, in her deposition, Fares stated that advising guests that outside professionals would be used for their appointments was not her "common practice."  Fares Depo. at 31:1-8.

informed the hotel's front desk agent that Astakhov agreed to handle the massage, the front desk agent said that she thought she knew Astakhov from prior work at the hotel. See Vasilets Depo. at 39:12-20. At their depositions, additional hotel employees similarly stated that employees knew Astakhov, that the hotel previously utilized his services, and that the hotel had never received complaints about Astakhov or any of the other massage therapists they used. See Def. 56.1 ¶¶ 35, 44, 49. Edwards also recalled that someone named "Yuri" was included on the hotel's list of preferred massage therapists. Edwards Depo. at 37:8-10.

According to publicly available records from the New York State Office of Professions, Astakhov obtained a license in massage therapy on October 1, 2008.[6] See ECF No. 58-15 at 2 (available at Appendix B); Verification Search, N.Y. Education Dep't https://www.op.nysed.gov/verification-search?licenseNumber=022139&professionCode=027 (last accessed August 18, 2023). However, his registration expired after November 30, 2013 and was never renewed. Id. Accordingly, at the time of plaintiff's massage,

---

[6] The Court takes judicial notice of the New York State Office of Profession's publicly available records. See e.g., Simeone v. T. Marzetti Co., No. 21 Civ. 9111 (KMK), 2023 WL 2665444, at *1 (S.D.N.Y. Mar. 28, 2023 ("'Courts may take judicial notice of public documents or documents of public record' in addition to 'records of administrative bodies,' such as government agencies") (quoting Casey v. Odwalla, Inc., 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018)); Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp., No. 12 Civ. 5141 (JMF), 2014 WL 476348, at *2 n.1 (S.D.N.Y. Feb. 6, 2014) ("[T]he Court may take judicial notice of public records."); Simon v. Smith & Nephew, Inc., 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) (taking judicial notice of public records contained on the FDA's website) (citing Gale v. Smith & Nephew, Inc., No. 12 Civ. 3614 (VB), 989 F. Supp. 2d 243, 246 n. 2 (S.D.N.Y. Feb. 13, 2013)).

Astakhov was not registered to practice massage therapy in New York.  Id.

Neither party has presented any evidence indicating that Astakhov had a criminal record or had been accused of criminal conduct at the time of plaintiff's massage.  See Def. 56.1 ¶¶ 29, 30; Pl. Counter 56.1 ¶¶ 29, 30.

### 5. Plaintiff's Alleged Sexual Assault

"[O]n October 19, 2018, during [her] in-room massage provided by Iouri Astakhov, [plaintiff] alleges to have been subjected to improper touching and sexual assault."  Def. 56.1 ¶ 31; Pl. Counter 56.1 ¶ 31.  Plaintiff subsequently reported the assault to the police and the hotel.  See Def. 56.1 ¶¶ 38, 39; Pl. Counter 56.1 ¶¶ 38, 39; ECF No. 58-6 ("Betts Depo.") at 22:2-25 (discussing her reporting of the assault to the police and hotel); ECF No. 58-12 ("Riley Depo.") at 21:6-22:20 (describing plaintiff's report to the hotel); Def. Br. at 7 ("[Plaintiff's assault] was first reported to the hotel four (4) days [after the assault] and resulted in a criminal investigation by the New York City District Attorney's office.").[7]

### 6. The Hotel's Investigation into Plaintiff's Complaint

At his deposition, Nicholas Riley, the general manager of the hotel, stated that the hotel did not have a formal policy for

---

[7] The New York City District Attorney's office conducted an investigation into plaintiff's complaint, but criminal charges were not brought.  See Def. Br. at 7.

investigating guests' complaints.  See Riley Depo. at 40:8-22.
However, after the hotel received plaintiff's complaint, they
looked into "who booked the massage therapist, what room they went
to, how they went up, [and] things of that nature."  Id. at 40:11-
14.  Through that process, Mr. Riley did not learn Astakhov's
identity and thus could not identify him during his deposition on
January 13, 2021.  See id. at 41:2-10.  As a result, Astakhov was
not identified to plaintiff until Vasilets' deposition on February
8, 2021 -- approximately two-and-a-half years after the sexual
assault occurred.  See Vasilets Depo. at 22:2-8; Def. Counter 56.1
¶ 47.

## B. Procedural Background

In her complaint of June 22, 2020, plaintiff asserts a single
claim of negligence.  See Compl.[8]  She claims that that defendants
"breached their duty to protect [her] from criminal acts" by:
(i) "[f]ailing to ascertain the identity of [Astakhov] prior to
hiring him to interact with Ms. Betts while she was unclothed,
alone, and vulnerable"; (ii) "[h]iring [Astakhov] to provide

---

[8] The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.
§ 1332, which grants district courts original jurisdiction over cases between
citizens of different states in which the amount in controversy exceeds
$75,000.  See 28 U.S.C. § 1332(a).  Complete diversity exists between the
parties as plaintiff is a citizen of Illinois and defendants' members are
citizens of New York and New Jersey.  See Compl. ¶ 9; ECF No. 74 (affidavits
affirming defendants' members are citizens of New York and New Jersey);
Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42,
49 (2d Cir. 2012) (providing that the citizenship of a limited liability company
is based on the citizenship of its members).  In addition, the amount in
controversy exceeds $75,000.  See Compl. ¶ 13.

massage services to Ms. Betts in her hotel suite without first
investigating his certifications or criminal history or otherwise
screening [him] in any way"; (iii) "[r]ecommending, hiring, and
allowing [Astakhov] to provide massage services to Ms. Betts in
her hotel suite without first informing Ms. Betts that [his]
identity was unknown and that Sixty LES had not investigated his
certifications or criminal history"; (iv) "[f]alsely assuring Ms.
Betts that hotel spa services could be safely provided in-room";
(v) "[p]roviding [Astakhov] with unsupervised access to Ms. Betts'
suite to perform hotel spa services"; and (vi) "[f]ailing to ensure
that reasonable and prudent policies and procedures were put into
place for screening Sixty LES's in-room massage therapists,
ascertaining the identity of in-room massage therapists employed
by the hotel, and investigating claims of sexual assault on hotel
guests by Sixty LES's massage therapists, including polices that
would insure that any employee or agent of the hotel that
perpetrates a sexual assault could be identified."  Id. ¶ 58.
Plaintiff further alleges that her "sexual assault was the
foreseeable consequence of Defendants' failure to exercise the
requisite standard of care," id. ¶ 59, and resulted in "serious
physical, emotional, and mental trauma requiring professional
medical treatment, including, but not limited to, posttraumatic
stress disorder, physical injuries, pain and suffering, severe and
debilitating mental distress, physical and mental trauma, shock,

11

numbness, fear, anxiety, involuntary and intrusive memories, disassociation, loss of trust, sleeplessness, flashbacks, diminished interest in travel and other pre-trauma activities, disruption to her normal routines, interference with personal relationships, anger, and depression," id. ¶ 44; see also id. ¶ 60.

Defendants filed an answer to plaintiff's complaint with 27 affirmative defenses on August 21, 2020, see ECF No. 17, and an initial pretrial conference was held on September 15, 2020, see ECF No. 18. Shortly thereafter, the parties began discovery, pursuant to a September 21, 2020 scheduling order. See ECF No. 22.[9] During the course of discovery, defendants informed plaintiff that they do not possess: any documents concerning Astakhov's "background, criminal history, or employment history"; any "contracts and agreements between [Astakhov] and any defendant"; any communications between defendants or any of their agents and Astakhov; any records reflecting in-room massage services provided by Astakhov; or any complaints concerning Astakhov or any other massage therapist used by the hotel. See ECF No. 58-4 at 4-6.

---

[9] The Court granted multiple requests by the parties for extensions of their discovery deadlines, see ECF Nos. 25, 34, and resolved several discovery disputes, see ECF Nos. 27, 30-32. Specifically, the Court granted plaintiff's letter motion to compel the remote deposition of Vasilets on January 21, 2021, see ECF No. 27, and denied defendants' motion to quash the subpoena of Edward Maynard, defendants' former President of Operations, on February 16, 2021, see ECF No. 31. During a February 25, 2021 conference, the Court also addressed plaintiff's request to compel the production of additional materials that were referenced during depositions. See ECF Nos. 30, 32.

After fact discovery was substantially completed,[10] the Court granted plaintiff's request on April 27, 2021 to stay the expert discovery schedule in light of the parties' efforts to mediate the case.  See ECF No. 36 at 2.  Once the parties' mediation concluded unsuccessfully, the Court granted both parties leave to file motions for summary judgment.  See ECF No. 53.[11]

Plaintiff filed her motion for summary judgment on December 16, 2022.  See ECF Nos. 56-59.  On January 12, 2023, defendants opposed plaintiff's motion and filed a cross-motion for summary judgment.  See ECF Nos. 60-64.  Plaintiff filed a reply in support of her motion and opposed defendants' motion on January 26, 2023.  See ECF Nos. 65-66.  Defendants filed a reply in support of their motion on February 8, 2023.  See ECF Nos. 67-68.

---

[10] At the time, the only remaining item needed to complete fact discovery was to serve Astakhov, who had not been located, with a subpoena for his deposition. See ECF No. 38 at 1-2.

[11] Defendants first requested leave to file a motion for summary judgment on June 17, 2021.  See ECF No. 37.  In response, plaintiff asked the Court to instead refer the case to mediation.  See ECF No. 38.  After defendants agreed to mediate the case on December 22, 2021, see ECF No. 41, the Court referred the case to the Court-annexed Mediation Program on December 27, 2021, see ECF No. 42.  As noted, the parties' mediation, which was held on June 3, 2022, was unsuccessful.  See ECF Nos. 45-46.  Thus, on August 18, 2022, defendants renewed their request for a pre-motion conference concerning their anticipated motion for summary judgment.  See ECF No. 46.  The Court held a conference on September 20, 2022, during which it granted defendants' request for leave to file a motion for summary judgment.  On October 24, 2022, plaintiff also requested leave to file a motion for summary judgment, which defendants opposed.  See ECF Nos. 51-52.  On November 7, 2022, the Court granted plaintiff leave to file her motion and set a briefing schedule on both motions.  See ECF No. 53.

**LEGAL STANDARD**

**A. Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986)); accord PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court

14

is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford, 391 F.3d at 83.

Once the moving party has satisfied their burden, to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). There must be more than a "scintilla of evidence in support of the [non-movant's] position"; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. In other words, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate." Citizens Bank of Clearwater, 927 F.2d at 710.

"The same standard of review applies when," as here, "the court is faced with cross-motions for summary judgment." Bell v. Pham, No. 09 Civ. 1699 (PAC), 2011 WL 1142857, at *2 (S.D.N.Y. Mar. 24, 2011) (citing Morales v. Quintel Entm't, Inc., 249 F.3d

115, 121 (2d Cir. 2001)).  "Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration." Id.

### B. Negligence

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon ex rel. Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (N.Y. 1985)).  "The plaintiff need not offer direct evidence in support of each element of its negligence claim."  Clark v. Target Corp., No. 18 Civ. 5865 (NRB), 2020 WL 2115348, at *3 (S.D.N.Y. May 4, 2020).  Rather, "it is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant . . . may be reasonably inferred."  Id. (first quoting Kramer v. Showa Denko K.K., 929 F. Supp. 733, 747 (S.D.N.Y. 1996), and then quoting Schneider v. Kings Highway Hosp. Ctr., Inc., 67 N.Y.2d 743, 744 (N.Y. 1986)).

### C. Negligence Per Se

"In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself.'"  Chen v. United States, 854 F.2d 622, 627 (2d Cir. 1988) (quoting Martin v. Herzog, 228 N.Y. 164, 168 (N.Y.

16

1920)) (emphasis in original).  "Violation of a statute, however, does not automatically constitute negligence per se." German by German v. Fed. Home Loan Mortg. Corp., 896 F. Supp. 1385, 1396 (S.D.N.Y. 1995).  "Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute." Id. (citing Van Gaasbeck v. Webatuck Central Sch. Dist. No. 1 of Towns of Amenia, 21 N.Y.2d 239, 244 (N.Y. 1967)).  In other words, "the statute must evidence 'an intention, express or implied, that from disregard of [its] command a liability for resultant damages shall arise 'which would not exist but for the statute.'" Id. at 1397 (first quoting Gain v. Eastern Reinforcing Serv., 193 A.D.2d 255 (3d Dep't 1993), and then quoting Shepard v. Zachary P. Taylor Publ. Co., 234 N.Y. 465, 468 (N.Y. 1923)).  "Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme." Id. In addition, "a causal relation between the violation and the harm to the plaintiff [must] be established." Id. at 1396.

## DISCUSSION

In her motion, plaintiff argues that "the negligence per se doctrine entitles [her] to summary judgment" on liability on the grounds that that the hotel violated: (i) New York Education Law § 7802, which prohibits entities claiming to be engaged in the practice of massage therapy from advertising services unless those services are performed by persons licensed or authorized to practice under New York law; and (ii) New York Education Law § 6512(2), which makes it a felony for anyone to knowingly aid or abet three or more unlicensed persons from practicing a profession that requires a professional license.  See Pl. Br. at 6, 11.  In turn, defendants argue that summary judgment should be granted in their favor because: (i) defendants cannot be held liable on a respondent superior theory; (ii) defendants cannot be held liable under a negligent supervision or retention theory; and (iii) there is no common law duty to conduct background checks of employees or independent contractors before engaging them.  See Def. Br. at 9-16.  Each motion is addressed below.

### A. Plaintiff's Motion for Summary Judgment

As noted, plaintiff argues that she is entitled to partial summary judgment on the grounds that defendants' conduct violated two sections of New York's Education Law -- § 7802 and § 6512(2) -- and thus constituted negligence per se.  See Pl. Br. at 6, 11. To begin, the Court reviews New York laws that are relevant to its

18

negligence per se analysis.   Then, it considers plaintiff's arguments arising from Sections 7802 and 6512(2).

### 1. Relevant New York Laws

#### i.   License and Registration Requirements

The New York laws governing the profession of massage therapy are provided in New York's Education Law at Title 8, Article 155, which spans §§ 7800-7807.   See N.Y. Education Law § 7800 ("This article applies to the profession of massage therapy.").   Those laws impose strict licensing and registration requirements on those engaged in the practice of massage therapy.   See id. § 7802.

Pursuant to Section 7804, "[t]o qualify for a license as a massage therapist, masseur or masseuse," an applicant must: (1) file an application with New York's Education Department; (2) complete various education requirements, consisting, in part, of "classroom instruction of a total of not less than five hundred hours in subjects satisfactory to the department"; (3) pass an examination; (4) be at least 18 years of age; (5) meet a citizenship or immigration status requirement; (6) "be of good moral character as determined by the department"; and (7) pay fees for an initial license, an examination, and registration each triennial registration period.   Id. § 7804.   Certain exceptions to the general licensing requirement are provided in Section 7805 for discrete groups of individuals, such as medical professionals,

barbers, and athletic trainers.[12]   Id. § 7805.   An unlicensed
massage therapist who does not fit into one of those exceptions
can only practice in New York if New York's Education Department
issues them a "limited permit to practice massage therapy as a
licensed massage therapist, masseur or masseuse" "under the
personal supervision of a person currently licensed and registered
to practice massage therapy in [New York]."   Id. § 7806(1), (3).
"The limited permit shall be valid for a period of not more than
twelve months or until the results of the next licensing
examination for which the person is eligible are officially
available, whichever comes first."   Id. § 7806(2).

    "A license is issued for life." Frequently Asked Questions,
N.Y. Education Dep't, https://www.op.nysed.gov/professions/
massage-therapy/questions-answers (last accessed August 18, 2023).
However, "those who are licensed must register every three years
to continue in active practice."   Id.   Indeed, "[r]egistration
identifies to the Department and consumers that [a licensed massage
therapist is] actively using these titles and terms and [is]
engaged in practice in the State, or plan[s] to do so."   Id.

    Pursuant to Section 7807, "[e]ach massage therapist licensed
pursuant to this article [is] required to register triennially
with the department to practice in the state," "comply with the

---

[12] Neither party argues that any of the statutory exceptions to licensure apply
to Astakhov.

provisions of the mandatory continuing education requirements prescribed in [its] subdivisions," and pay a "mandatory continuing education fee" and "triennial registration fee." Id. § 7806(1)(a), (6). "Massage therapists who do not satisfy the mandatory continuing education requirements shall not practice until they have met such requirements, and they have been issued a registration certificate." Id. § 7806(1)(a) (emphasis added). Massage therapists are required to "have a current registration certificate available for inspection at all times." 8 NYCRR § 59.8(c).

The only way a licensed massage therapist who has failed to renew their registration may continue practicing is if "[t]he department, in its discretion, [] issue[s] a conditional registration to [that] licensee," after the massage therapist "agrees to make up any deficiencies and complete any additional education which the department may require." N.Y. Education Law § 7807(3). "The duration of such conditional registration shall be determined by the department but shall not exceed one year." Id. "Any licensee who is notified of the denial of registration for failure to submit evidence, satisfactory to the department, of required continuing education and who practices without such registration, may be subject to disciplinary proceedings." Id. In addition, "[p]racticing a profession without a license and current registration is a felony in New York State." Professional

Misconduct Enforcement, N.Y. Education Dep't, https://www.op.
nysed.gov/enforcement/professional-misconduct-enforcement (last
accessed August 18, 2023) (emphasis added) (hereinafter
"Professional Misconduct Enforcement").

    **ii.   Prohibition on Sexual Touching**

    The New York Department of Education's Guidelines for
Practice (the "Guidelines") clearly state that "[m]assage
therapists will avoid exerting undue influence on
patients/clients"; "will never engage in sexual behavior during
the course of the professional relationship"; and "should not
engage in sexual conduct or activities, even if the patient/client
attempts to sexualize the relationship." Guidelines for Practice,
N.Y. Education Dep't, https://www.op.nysed.gov/professions/mass
age-therapy/guidelines-practice (last accessed August 18, 2023)
(hereinafter, "Guidelines for Practice").   In addition, "[n]o
manipulation of the genital areas is permitted, even at the
patient's/client's request." Id.

    Both the Guidelines and the Rules of the Board of Regents
state that "[m]assage of genital areas" is "immoral conduct." Id.;
8 NYCRR § 29.13.  "Immoral conduct" is defined as "conduct in the
practice of a profession which evidences moral unfitness to
practice the profession." Id. § 29.1(b)(5).  Such conduct is
"unprofessional" and "prohibited." Id. § 29.1(a).

**2. N.Y. Education Law § 7802**

The Court next addresses plaintiff's argument that defendants' conduct constituted negligence per se under New York Education Law § 7802 and proximately caused plaintiff's injuries. Section 7802 states:

> Only a person licensed or authorized pursuant to this chapter shall practice massage therapy and only a person licensed under this article shall use the title "masseur," "masseuse" or "massage therapist." No person, firm, partnership or corporation claiming to be engaged in the practice of massage or massage therapy shall in any manner describe, advertise, or place any advertisement for services as defined in section seventy-eight hundred one of this article unless such services are performed by a person licensed or authorized pursuant to this chapter.[13]

N.Y. Education Law § 7802.  In other words, an entity violates Section 7802 if it: (i) claims to be engaged in the practice of massage therapy; (ii) advertises massage therapy services; and (iii) allows for those massage therapy services to be performed by a person who is not "licensed or authorized" pursuant to New York's Education Law.  Id.

Here, the first two prongs are easily met.  There is no dispute that the hotel placed a spa menu in all rooms at the hotel, see Pl. 56.1 ¶ 7; Def. Counter 56.1 ¶ 7, in which the hotel claimed

---

[13] New York Education Law § 7801, referenced therein, broadly defines massage therapy as "engaging in applying a scientific system of activity to the muscular structure of the human body by means of stroking, kneading, tapping and vibrating with the hands or vibrators for the purpose of improving muscle tone and circulation."  N.Y. Education Law § 7801.

23

to be engaged in massage services, see Spa Menu at 2 (describing "[t]he SPA at SIXTY LES [as] a 1,200 square foot oasis of renewal and relaxation available exclusively to hotel guests" that is "[t]ucked beneath the lobby of SIXTY LES").  The spa menu also advertises the various massage services offered at the hotel, including in-room massage appointments.  See id. at 3.  Although the hotel used independent contractors and not employees to fulfill its guests' appointment requests, Section 7802 does not limit its applicability to only entities that employ massage therapists. See N.Y. Education Law § 7802.

The last prong, which prohibits individuals who are not "licensed or authorized" under New York's Education Law from performing massage services, has also been satisfied.  Although Astakhov obtained a license to practice massage therapy in 2008, his registration expired after November 30, 2013 and was never renewed.  See ECF No. 58-16 at 2.

While the Court understands that Section 7802 mandates that an individual is "licensed or authorized" under New York's Education Law, see N.Y. Education Law § 7802 (emphasis added), reading the "or" between "licensed" and "authorized" as permitting the practice of massage therapy by someone who is licensed but not registered to practice would clearly frustrate the legislative intent of Section 7802 as well as Article 155 more broadly, see Willis v. United States, 719 F.2d 608, 612-13 (2d Cir. 1983) ("It

24

is settled that 'or' may be read to mean 'and' when the context so indicates.") (citing De Sylva v. Ballentine, 351 U.S. 570, 573-74 (1956); Union Insurance Co. v. United States, 73 U.S. 759, 764 (1868); United States v. Moore, 613 F.2d 1029, 1040 (D.C. Cir. 1979), cert. denied, 446 U.S. 954 (1980); and 1A C. Sands, Sutherland Statutes and Statutory Construction § 21.14, at 91 (4th ed. 1972)); Blue Bell, Inc. v. Jaymar-Ruby, Inc., 497 F.2d 433, 438 n.13 (2d Cir. 1974) ("It is true that the Supreme Court has noted that 'the word 'or' is often used as a careless substitute for the word 'and' . . .' and has therefore rewritten statutes where necessary to avoid obvious contradiction and to effectuate congressional intent.") (citing De Sylva, 351 U.S. at 573-80). The legislature may have used "or" in Section 7802 to allow unlicensed massage therapists to be nevertheless authorized to practice in New York under a statutory exception. However, it is simply inconceivable that Section 7802 is intended to create a new exception for unregistered massage therapists, whose practice in New York is explicitly banned under Section 7807 and would qualify as a felony. See N.Y. Education Law § 7807; Professional Misconduct Enforcement. As such, the Court concludes that defendants violated Section 7802 by allowing Astakhov, an unregistered massage therapist who was not authorized to practice massage therapy in New York, to perform plaintiff's massage.

Moreover, plaintiff was clearly within the class of persons that Section 7802 is intended to protect.  See German by German, 896 F. Supp. at 1396.  New York's massage therapy laws are certainly intended, at least in part, to protect massage therapy clients, who are often unclothed and in a vulnerable position during massages, from being subjected to inappropriate sexual touching and other forms of immoral conduct.  See 8 NYCRR § 29.13; (prohibiting sexual touching during massage therapy); Guidelines for Practice (same); Dillon v. Kim, 158 Misc. 2d 711, 717 (Sup. Ct., Nassau Cnty., June 23, 1993) ("[T]he purpose underlying the promulgation of Article 155 of the Education Law, which provides for the licensure of persons practicing the profession of massage . . . is to insure the welfare and safety of persons seeking, not touching of a sexual nature, but rather massage therapy free of sexual or other inappropriate contact.").  Indeed, "[a] person who receives massage therapy in their . . .  hotel room relies upon the licensure statutes in that he or she has an expectation that the person performing the massage has proven that he or she has certain skills and is of good moral character; the client relies on the license to protect him or herself from harmful and/or sexual touching." Dillon, 158 Misc. 2d at 717.  Finding negligence per se for defendants' violation of Section 7802 would therefore promote the legislative purpose of the statute and be consistent with the legislative scheme.  See German by German, 896 F. Supp.

at 1396.  Accordingly, the Court finds defendants negligent per se based on their violation of Section 7802.[14]

Finally, there is no question that defendants' "violation of the statute was the proximate cause of the plaintiff's injury." Id.  "Although we acknowledge that the issue of proximate cause is usually determined by a jury, where, as here, the facts are undisputed, the question becomes one for the court."  Comolli v. 81 & 13 Cortland Assocs. L.P., 285 A.D.2d 863, 864 (3d Dep't 2001) (internal citations omitted); see also Lawler v. Globalfoundries U.S., Inc., No. 12 Civ. 0327 (LEK) (RFT), 2014 WL 4900480, at *8 (N.D.N.Y. Sept. 30, 2014)("Based on these facts, no rational factfinder could conclude that the absence of a safety device was not at least one proximate cause of Lawler's accident."); Rivera v. City of New York, 11 N.Y.2d 856, 857 (1962) ("Where the evidence as to the cause of the accident which injured plaintiff is undisputed, the question as to whether any act or omission of the defendant was a proximate cause thereof is one for the court and not for the jury."); Chainani by Chainani v. Bd. of Educ. of City of New York, 201 A.D.2d 693, 695, (2d Dep't 1994), aff'd, 87 N.Y.2d 370 (1995) (holding that "there was no basis for the jury to

_____

[14] The Second Circuit has previously found violations of the New York Education Law can constitute negligence per se.  See e.g., Ezagui v. Dow Chemical Corp., 598 F.2d 727, 733 (2d Cir. 1979); cf. Ades v. 57th St. Laser Cosmetica, LLC, No. 11 Civ. 8800 (KNF), 2013 WL 2449185, at *11 (S.D.N.Y. June 6, 2013) (finding "evidence exists tending to show either negligence per se or absolute liability" on the grounds that plaintiff violated New York law by performing a treatment on plaintiff without a "valid esthetics license").

conclude that [a bus driver's] violation of the statute [requiring him to instruct passengers to cross in front of the bus] was not a proximate cause of the accident").

Simply put, if defendants had verified whether Astakhov was authorized to practice in New York, as is required under Section 7802, they would have learned he was not and thus could not have lawfully permitted Astakhov to perform plaintiff's massage. Furthermore, given the licensing and registration requirements set forth in Article 155 are specifically intended, at least in part, to prevent sexual misconduct, it was reasonably foreseeable that plaintiff's assault could result from permitting an individual who was not authorized to practice in New York to perform her massage. See Vaneria v. Consol. Edison Co. of New York, No. 120968/97, 1999 WL 292644, at *3 (Sup. Ct., N.Y. Cnty. Feb. 10, 1999) (finding harm was "readily foreseeable").  Thus, "a reasonable jury could reach only one conclusion": defendants' violation of Section 7802 proximately caused plaintiff's assault.  Packer v. Skid Roe, Inc., 938 F. Supp. 193, 196 (S.D.N.Y. 1996).[15]  Accordingly, plaintiff's motion for partial summary judgment is granted on the basis that

---

[15] In connection with the issue of proximate cause, the parties dispute whether plaintiff was put on notice that Astakhov was an independent contractor and, if so, whether plaintiff would have consented to receiving a massage from an unlicensed, independent contractor.  See Pl. Br. at 13-14; Def. Opp. at 19-20; Pl. Reply at 13-14.  Proximate cause does not turn on either issue, and thus the Court need not address these arguments.

defendants' conduct constituted negligence per se under Section 7802 and proximately caused plaintiff's injuries.

### 3. N.Y. Education Law § 6512(2)

The Court now turns to plaintiff's argument that she is also entitled to summary judgment on the grounds that defendants violated New York Education Law § 6512(2).  Section 6512(2) states:

> Anyone who knowingly aids or abets three or more unlicensed persons to practice a profession or employs or holds such unlicensed persons out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who knowingly aids or abets three or more persons to practice any profession as exempt persons during the time when the professional licenses of such persons are suspended, revoked or annulled, shall be guilty of a class E felony.

N.Y. Education Law § 6512(2).  At a minimum, plaintiff has not established that: (i) defendants acted "knowingly"; or (ii) that defendants aided and abetted "three or more" unlicensed persons in the practice of massage therapy.

With respect to the knowledge requirement, plaintiff has presented no evidence that defendants knew that Astakhov or any of the other massage therapists it used were not authorized to practice massage therapy in New York.  At best, plaintiff has shown that the hotel routinely failed to verify that the massage therapists it used were authorized to practice massage therapy in New York.  Plaintiff has not established that such reckless conduct satisfies Section 6512(2)'s knowledge requirement.

In addition, plaintiff has not established that the hotel used "three or more" massage therapists who were not authorized to practice. Relying only on the deposition testimony of Edwards and Vasilets, plaintiff contends that, of all the preferred massage therapy providers used by the hotel, only "one or two" were licensed. See Pl. Br. at 12; Pl. 56.1 ¶ 24. However, plaintiff's reliance on Edwards and Vasilets' testimony is misplaced. With respect to Edwards' testimony, plaintiff majorly mischaracterizes the record. Indeed, Edwards never said that "only one or two" of the roughly ten independent contractors who performed massages were licensed. See Edwards Depo. at 38:7-14; 45:6-17; Def. 56.1 ¶ 45. Rather, he stated the hotel collected only a few licenses from the massage therapists it used, before utilizing a service called "Nomi." See id. And, even if the Court accepts plaintiffs' argument that Vasilets, who was regularly used by the hotel and had an out-of-state license, was also not authorized to practice in New York, plaintiff would have only presented evidence that two massage therapists -- not "three or more" -- were used by the hotel. See Pl Reply at 10; Vasilets Depo. at 28:7-16. As such, plaintiff's motion for partial summary judgment on the grounds that defendants violated N.Y. Education Law § 6512(2) is denied.

## B. Defendants' Motion for Summary Judgment

In their motion, defendants argue that they are entitled to summary judgment because: (i) defendants cannot be held liable on

a respondent superior theory; (ii) defendants cannot be held liable under a negligent supervision or retention theory; and (iii) there is no common law duty to conduct background checks of employees or independent contractors before engaging them.  <u>See</u> Def. Br. at 9-16.  The Court agrees with defendants' basic points.

First, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 144-45 (2d Cir. 2010) (quoting <u>Ross v. Mitsui Fudosan</u>, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)); <u>see also</u> <u>Edwardo v. Roman Cath. Bishop of Providence</u>, 579 F. Supp. 3d 456, 470 (S.D.N.Y. 2022) ("[U]nder New York law, Fr. Magaldi's sexual abuse — however reprehensible — cannot be considered to have been committed 'for the benefit' of Defendants, and cannot be attributed to Defendants."), <u>aff'd</u>, 66 F.4th 69 (2d Cir. 2023); <u>Adorno v. Corr. Servs. Corp.</u>, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) ("New York courts have repeatedly found no vicarious liability for claims involving sexual misconduct, including sexual assault."); <u>Judith M. v. Sisters of Charity Hosp.</u>, 93 N.Y.2d 932, 933 (N.Y. 1999) (finding hospital orderly tasked with bathing the plaintiff "departed from his duties for solely personal motives unrelated to the furtherance of the Hospital's business" when he sexually abused plaintiff).

To avoid the conclusion that sexual assault is not inside the scope of employment, plaintiff argues, without citing to any evidence, that "[a]t trial, after cross-examination of its witnesses, the jury might rationally conclude that the reason the Hotel did not use licensed massage therapists, nor keep any records on those it engaged to provide services, [w]as that it was in actuality running a discreet, 'happy ending,'" massage service, perhaps even a thinly veiled prostitution ring," which conferred a benefit to the hotel.  ECF No. 66 ("Pl. Opp.") at 7.   The Court firmly rejects plaintiff's baseless allegation.

As an initial matter, plaintiff misunderstands the parties' respective burdens on summary judgment.   Given defendants are "moving for summary judgment against [plaintiff,] who will bear the ultimate burden of proof at trial, [defendants'] burden will be satisfied if [they] can point to an absence of evidence to support an essential element of [plaintiff's] claim." Goenaga, 51 F.3d at 18 (citing Celotex Corp., 477 U.S. at 322-23).   Once defendants meet their burden, plaintiff "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial'" to defeat defendants' motion.   Wright, 554 F.3d at 266 (quoting Fed. R. Civ. P. 56(e)).   Here, plaintiff has utterly failed to "plead more than conclusory allegations and present sufficient facts to create a reasonable inference that [the hotel's] business included sex crimes."  Alsaud, 12 F. Supp. 3d at 678.

Furthermore, the hypothetical and unsupported criminal scheme that plaintiff invents would only confer a benefit to the hotel if it involved consenting, willing customers.  "[T]here is [plainly] no 'business purpose' which 'alone' would have compelled" [Astakhov] to sexually assault Plaintiff," and the Court refuses to allow plaintiff to concoct such an unbelievable, and frankly offensive, tale at trial. Chen v. Cai, No. 19 Civ. 05387 (PMH), 2022 WL 917575, at *4 (S.D.N.Y. Mar. 28, 2022).  Therefore, the Court concludes that defendants cannot be held liable on a theory of respondent superior for Astakhov's sexual misconduct.

Second, "[t]o state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004).  "Such claims require specific allegations of the employee's past wrongdoing." Doe v. Uber Techs., Inc., 551 F. Supp. 3d 341, 362 (S.D.N.Y. 2021); see also Doe v. Alsaud, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) ("New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if

it is aware of specific prior acts or allegations against the employee.").

Here, Astakhov was an independent contractor, not an employee, and no evidence has been presented that defendants knew or should have known of Iouri Astakhov's alleged propensity to commit sexual assault. Def. 56.1 ¶¶ 34, 50, 52. Indeed, after taking 10 depositions and receiving discovery, plaintiff has presented no evidence that Astakhov "had committed any criminal act prior to October 19, 2018," id. ¶ 51, or that the hotel had received any complaints about him in the past, id. ¶¶ 26, 27, 35, 44, 49. In the absence of such allegations, any claim for negligent supervision or retention under New York law would fail.

Third, New York courts have, in fact, held that "[t]here is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee." KM v. Fencers Club, Inc., 164 A.D.3d 891, 893 (2d Dep't 2018); see also Amendolara v. Macy's New York, 19 A.D.2d 702, 702 (1st Dep't 1963) ("[Defendant] was under no duty to inquire into the possibility that Charters might have been convicted of crime in the past, and before the incident in question nothing transpired to alert it to the possibility that such an incident might occur."). Plaintiff has identified no case law that disputes this rule, and, as established above, there is "no evidence that

[defendants] had knowledge of any facts that would have caused a reasonably prudent person to conduct a criminal background check on [Astakhov]." <u>Fencers Club, Inc.</u>, 164 A.D.3d at 893.[16]

Nevertheless, as discussed, defendants violated New York Education Law § 7802 and proximately caused plaintiff's injuries when they failed to verify that Astakhov was authorized to perform massage therapy in New York prior to engaging him to handle plaintiff's massage. As such, liability is resolved in favor of plaintiff, and defendants' motion for summary judgment is denied in its entirety.

## CONCLUSION

Accordingly, the Court concludes that defendants' conduct constituted negligence per se under New York Education Law § 7802 and proximately caused plaintiff's injuries. Plaintiff's motion for partial summary judgment is thus granted in part and denied in part, and defendants' motion for summary judgment is denied in its entirety. A teleconference is scheduled for September 21, 2023 at 1:00 p.m. to discuss the damages phase of the case. The Clerk of

---

[16] To be clear, the Court's previous finding -- that the hotel's violation of New York Education Law § 7802 proximately caused plaintiff's injuries -- does not conflict with the present finding -- that plaintiff has not presented any evidence that Astakhov had a propensity to commit sexual assault. Given that there is no common law requirement to institute specific hiring procedures absent a showing of past wrongdoing by a prospective employee, the present inquiry focuses on whether evidence has been presented of past misconduct by Astakhov. The Court's prior proximate cause analysis, which was based on the hotel's violation of New York Education Law § 7802, did not turn on such evidence.

Court is respectfully instructed to terminate the motions pending

at ECF Nos. 56 and 63.


**SO ORDERED.**


Dated:    New York, New York
          August 21, 2023

                                    _____
                                     NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

**APPENDICES**

## A. Appendix A



Tucked beneath the lobby of SIXTY LES; The SPA at SIXTY LES is a 1,200 square foot oasis of renewal and relaxation available exclusively to hotel guests. Our spa and fitness areas combine aspects of privacy and modern luxury. Complimentary fitness and sauna facilities are available 24 hours a day, seven days a week. Advance reservations, via our concierge team, are required to secure spa services in our single spa treatment room.

| MASSAGE | 60 MINUTES | 90 |
|---|---|---|
| *CUSTOMIZED MASSAGE* (Also available in your room) | $150 | $225 |

Your therapist will create a customized session using a mixture of Swedish, Deep Tissue, Sports, and other massage techniques.

Please inquire for pricing of specialty modalities such as Pre-natal, Thai, and Shiatsu.

**FACIALS | BY THE COLLAGEN BAR**

| | |
|---|---|
| *ESSENTIAL* (approximately 50 minutes) | $150 |

A deep cleansing and refreshing facial; features a decongesting & hydrating mask of organic seaweed, collagen and silicon.

| | |
|---|---|
| *MAX REJUVENATION* (approximately 50 minutes) | $230 |

A designer peel and elite 5-layer custom mask. This individually customized treatment is results driven and individually focused to address all of your skin's concerns.

| | |
|---|---|
| *COLLAGENIZER® FACIAL TREATMENT* (approximately 50 minutes) | $280 |

Increase your skin's firmness, collagen content, hydration, and reduce fine lines, wrinkles, and sagging skin; all without cosmetic injections or "down-time". Features the proprietary technology of Dermoelectroporation which uses the skin's water based intercellular channels to promote Transdermal delivery.

conciergeles@sixtyhotels.com  |  212.542.8690  |  In-Room Phones: Touch "Concierge"

## SPA SERVICES AVAILABLE IN YOUR ROOM

We consult with independent professionals who specialize in mobile spa treatments.
Please allow at least 24 hours advance notice for any appointment inquiries.

| | |
|---|---|
| *MAKE UP APPLICATION* | $ Priced upon inquiry |
| *BLOW-OUTS & UP-DOS* | $ Priced upon inquiry |
| *MANICURE & PEDICURE* | $ Priced upon inquiry |
| *OTHER CUSTOM SPA SERVICE REQUESTS* | $ Priced upon inquiry |

### HOURS

SPA TREATMENTS | 10AM-8PM (after hours pricing upon request)
FITNESS & SAUNA | 24 HOURS

### RESERVATIONS

Scheduling spa appointments at least one hour prior to your arrival is recommended,
to avoid disappointment. Therapists are called to the hotel upon your request.

### ACCESS

The Spa Level is located directly below the hotel lobby, and may be accessed via the
middle elevator, in the lobby, using the 'spa' call button and your guest room key.

### PAYMENT & GRATUITY

All charges will be applied to your hotel bill. Discretionary gratuities are not included
in our pricing. For excellent service a customary gratuity ranges from 15-20%.

### ARRIVAL & CHECK IN

IN-SPA | check in with the concierge, on the ground floor.
IN-ROOM | The concierge will call to announce the arrival of your therapist.
LATE ARRIVALS | In the case of a late arrival, treatments may be shortened to honor
the following guest. Honoring full treatment for late arrivals may increase pricing.

### CANCELLATION POLICY

Cancellations or changes must be made by 7PM the evening prior to your session.
Failure to give sufficient notice will result in a 50% charge. Cancellations or changes
with less than 4 hours notice, or a no-show, will result in a full charge.

### DUETS OR COUPLES

Our Spa is designed as an individual retreat. For duet or side-by-side services, we can
extend the use of a hotel suite, if available. Alternatively, you may wish to discuss an
upgrade to your existing hotel reservation.

conciergeles@sixtyhotels.com   |   212.542.8690   |   In-Room Phones: Touch 'Concierge

**B. Appendix B**

 

**Office of the Professions**

## Verification Searches

The information furnished at this web site is from the Office of Professions' official database and is updated daily, Monday through Friday. The Office of Professions considers this information to be a secure, primary source for license verification.

### License Information *

05/28/2021

**Name :** ASTAKHOV IOURI
**Address :** BROOKLYN NY
**Profession :** MASSAGE THERAPY
**License No:** 022139
**Date of Licensure :** 10/01/2008
**Additional Qualification :**   Not applicable in this profession
**Status :** NOT REGISTERED
**Registered through last day of :** 11/13

* Use of this online verification service signifies that you have read and agree to the terms and conditions of use. See HELP glossary for further explanations of terms used on this page.