UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MARGARET BETTS,

              Plaintiff,

       - against –

SIXTY LOWER EAST SIDE, LLC,
SIXTY HOTELS, LLC, and SIXTY
HOTEL MANAGER, LLC,

              Defendants.

------------------------------X

**MEMORANDUM AND ORDER**
20 Civ. 4772 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      This action arises from the pled sexual assault of plaintiff Margaret Betts ("plaintiff") by a massage therapist during an in-room massage appointment at Sixty LES, a hotel owned and managed by defendants Sixty Lower East Side, LLC, Sixty Hotels, LLC, and Sixty Hotel Manager, LLC (together, the "defendants").[1]  On August 24, 2023, this Court resolved competing motions for summary judgment on liability, finding that defendants' conduct: (1) violated New York Education Law § 7802, thus constituting negligence per se; and (2) proximately caused plaintiff's injuries by allowing plaintiff's massage to be conducted by an unregistered massage therapist who was not authorized to practice massage therapy in New York.  See Betts v. Sixty Lower E. Side, LLC, No. 20 Civ. 4772 (NRB), 2923 WL 5352334, at *13 (S.D.N.Y. Aug. 21,

---

[1]    To the Court's understanding, the defendants have not asserted that the assault did not, in fact, occur.

2023), <u>appeal withdrawn</u>, No. 23-1289, 2024 WL 1152438 (2d Cir. Jan. 22, 2024).

With respect to the trial on damages scheduled to commence on July 15, 2025, the parties have each filed motions <u>in limine</u> seeking to preclude the opposing party's proposed expert witnesses from testifying at trial.  <u>See</u> ECF Nos. 158-68.  For the reasons discussed herein, both parties' motions are denied.

**BACKGROUND**

Plaintiff has proffered two expert witnesses, Dr. Steven A. Fayer and Dr. Joseph Otonichar, to testify at trial that plaintiff's assault resulted in lasting psychological injuries, including symptoms of post-traumatic stress disorder ("PTSD"). Defendants, meanwhile, have proposed to offer one expert witness, Dr. Julie Medlin, to testify at trial that plaintiff's assault did not significantly impact her pre-existing psychological symptoms. We briefly summarize each expert's credentials and proposed testimony below.

## I.   Plaintiff's Proposed Expert Witnesses

### a. Dr. Steven A. Fayer

Dr. Fayer is an Associate Professor of Psychiatry at The Icahn School of Medicine at Mount Sinai Hospital and an Attending Physician at The Mount Sinai Hospital.  ECF No. 162-1 at 5.  He

received his M.D. from Georgetown School of Medicine in 1974 and completed his residency in Psychiatry at Mount Sinai Medical Center in New York City. Id. at 3. He is certified by the National Board of Medical Examiners and the American Board of Psychiatry and Neurology. Id.

Dr. Fayer interviewed plaintiff via Zoom on September 29, 2021 and October 20, 2021. Id. at 16. On November 9, 2021, Dr. Fayer issued a twelve-page report of his findings. Id. at 16-28. In this report, Dr. Fayer concluded that plaintiff had developed "trauma-induced anxiety with features of posttraumatic stress" as a result of her assault, with her "trauama-induced anxiety, substance abuse, depression, ADHD, and generalized anxiety . . . significantly exacerbated by" what occurred. Id. at 27.

**b. Dr. Joseph Otonichar**

Dr. Joseph Otonichar is a Clinical Assistant Professor in the Department of Psychiatry at New York University's Grossman School of Medicine, the Medical Director of Mental Health at NYC-HHC Correctional Health Services, and a Co-Partner at Gotham Forensics. ECF No. 162-4 at 45-47. He received a Master's Degree in Biology from Cleveland State University in 2008, and he subsequently received his D.O. from Midwestern University – Arizona College of Osteopathic Medicine in 2012. Id. at 44. He

is certified by the American Board of Psychiatry and Neurology in Forensic Psychiatry and is a Diplomat of the American Board of Psychiatry and Neurology in Psychiatry.  Id.

Dr. Otonichar interviewed plaintiff via the Psychology Today videoconferencing platform on January 18, 2024 and February 7, 2024.  Id. at 6.  On March 1, 2024, Dr. Otonichar issued a thirty-seven-page report of his findings.  Id. at 6-42.  In this report, he determined that plaintiff suffered from "significant trauma-induced psychiatric symptoms" as a result of her assault, noting that, although she "has a longstanding history of mental illness, . . . she developed new and worsening symptoms" as a result of the incident, "which have caused her severe distress and functional impairment."  Id. at 36-37.

## II.  Defendants' Proposed Expert

Dr. Julie Medlin is a licensed psychologist and the Director of the Medlin Treatment Center in Marietta, Georgia.  ECF No. 162-6 at 44-45.  She received a Master's Degree in Science in Clinical Psychology from the University of Florida in 1993, and she subsequently received her Doctor of Philosophy in Clinical Psychology from the University of Florida in August 1995.  Id. at 44.

Dr. Medlin interviewed plaintiff on June 20, 2024 and November

-4-

11, 2024.  Id. at 5.  The first interview was conducted virtually, but it was halted shortly after it began.  Id. at 6-8.  The second interview occurred in person in a hotel conference room in Newark, New Jersey.  Id. at 9.  On January 12, 2025, Dr. Medlin issued a thirty-eight-page report detailing her findings.  Id. at 5-42.  In this report, she determined that, although plaintiff reported experiencing "significant emotional distress" due to the assault, including "anxiety, nightmares, depression, and insomnia," her records indicated that "she already had these problems before the" alleged assault.  Id. at 36 (emphasis in original).  Specifically, Dr. Medlin concluded that, although plaintiff "experienced an increase in emotional distress and symptoms of PTSD following the sexual assault in New York," her symptoms "do not appear to have ever been severe or chronic enough to meet the diagnostic criteria for PTSD" and that other issues, including financial, familial, and relationship problems, "clearly contributed to her emotional distress" in the years following the assault.  Id. at 41.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony at trial, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand. "To make this determination, a court must first ascertain whether the proffered expert has the educational background or training in a relevant field, by looking at the totality of the witness's background." Tardif v. City of New York, 344 F. Supp. 3d 579, 595-96 (S.D.N.Y. 2018) (internal quotation and citations omitted). An expert may be qualified based on his or her knowledge, skill, experience, training, or education. Fed. R. Evid. 702.

Once a district court has determined that an expert is qualified, the court must also ascertain whether that expert's testimony is "rests on both a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 597 (1993). In Daubert, the Supreme Court specified several factors that courts may consider in making this assessment,

including the ability to test the expert's theory, whether it has been subject to peer review and publication, and the degree of acceptance within the relevant scientific community.  See id. at 589-95.  These factors, however, are not a "definitive checklist or test."  Id. at 593.[2]  Rather, a district court's "gatekeeping inquiry must be tied to the facts of a particular case."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

## DISCUSSION

Having reviewed the parties' submissions, we find that all three proposed experts are sufficiently qualified to testify based on their credentials and the law.  Because each proposed expert is qualified to testify, we could easily end the discussion here.  However, to ensure there is a clear record for any appellate review, we will briefly address the parties' remaining arguments below.

## I.  Plaintiff's Motion to Exclude the Testimony of Dr. Medlin

Plaintiff has moved to exclude Dr. Medlin's testimony on the grounds that she: (i) lacks qualifications to serve as an expert in this case; (ii) is not licensed to practice psychology in New

---

[2]    Notably, courts have recognized the "certain of these Daubert factors are less readily applied to psychological and psychiatric evidence, where 'the research, theories and opinions cannot have the exactness of [other] science methodologies.'"  Qube Films. Ltd. v. Padell, No. 13 Civ. 8405 (AJN), 2016 WL 888791, at *2 (S.D.N.Y. Mar. 1, 2016) (quoting Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1297 (8th Cir. 1997)).

York; and (iii) employed tests and techniques in her examination that were not subject to peer review and have not gained general acceptance in the relevant scientific community.    ECF No. 161 ("Plaintiff's Motion," or "Pl. Mot.")  at 7-19.

As an initial matter, as previously stated, it is clear based on even a cursory review of Dr. Medlin's curriculum vitae that she is qualified to serve as an expert in this case.  See ECF No. 162-6 at 44-55.  Dr. Medlin is a licensed psychologist and Certified Clinical Trauma Professional.  Id. at 44.  Although plaintiff contends that Dr. Medlin's career has been focused "on child trauma, juvenile sex offenders, and adult perpetrators, not adult victims," her curriculum vitae states that she founded a private, outpatient counseling center more than twenty-five years ago to offer "specialized evaluation and treatment for sexual and physical trauma victims" and conduct "forensic and clinical evaluations of alleged or confirmed sexual abuse victims and perpetrators, including in criminal and civil cases."  Id. at 44-45.  This work experience is directly relevant to the issues in this action.  Moreover, even if it were not, "[a]n expert's training need not narrowly match the point of dispute in the case." Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 73 (S.D.N.Y. 2001). Accordingly, plaintiff's proposed exclusion of

-8-

Dr. Medlin's testimony on the basis of her qualifications and experience is denied.

Next, plaintiff contends that Dr. Medlin may not testify in this proceeding because she is not licensed to practice in New York. Pl. Mot. at 10-11. However, Dr. Medlin's curriculum vitae states that she is licensed with PSYPACT, an interstate organization that allows licensed psychologists to practice telepsychology and conduct temporary, in-person sessions across state boundaries. See ECF No. 162-6 at 44; ECF No. 166 ("Defendants' Reply," or "Defs. Reply") at 18. Dr. Medlin conducted her evaluation of plaintiff in New Jersey, which is a participant in PSYPACT. Defs. Reply at 18-19. Accordingly, plaintiff's motion to exclude Dr. Medlin's testimony on this basis is denied.

Plaintiff further asserts that Dr. Medlin's testimony must be excluded because the tests used by Dr. Medlin to assist in her evaluation of plaintiff's psychological condition are unreliable, have not been subject to peer review, and have not gained general acceptance in the relevant scientific community. Pl. Mot. at 12-19. Dr. Medlin conducted the following psychological tests on plaintiff: the Personality Assessment Inventory (PAI); Minnesota Multiphasic Personality Inventory-3 (MMPI-3); Trauma Symptom

Inventory, 2nd Edition (TSI-2); and Inventory of Problems (IOP-29).  ECF No. 162-6 at 35-39.  Although plaintiff claims that the validity of each test is disputed, plaintiff's motion fails to present sufficient evidence to support this assertion.  Rather, a brief internet search suggests that, although some instability is inherent in any tests that involve self-reporting, the tests employed by Dr. Medlin are widely used and generally considered to be reliable, including in diagnosing PTSD.[3]  In fact, one of the two scientific articles cited by plaintiff clearly states that the PAI is both reliable and generally accepted in the field of psychological assessment.[4]

---

[3]    See, e.g., Les C. Morey, The Personality Assessment Inventory (PAI), THE USE OF PSYCHOLOGICAL TESTING FOR TREATMENT PLANNING AND OUTCOMES ASSESSMENT: INSTRUMENTS FOR ADULTS 509-551 (Mark E. Maruish, ed., 2004) (the PAI "has gained rapidly in popularity as a clinical and research tool" since its introduction in 1991 and is "among the most widely used measures relied on in legal cases involving emotional injury"); Megan Whitman and Yossef Ben-Porath, Applying the Daubert Factors to MMPI-3-Based Testimony, 17 Psychological Injury and Law 1 (Jan. 2024), https://doi.org/10.1007/s12207-023-09493-1 (applying the Daubert factors to the MMPI-3, determining that "the evidence . . . indicates that the MMPI-3 has been subjected to extensive empirical testing" and identifying "several indicators of general acceptance that can be cited to support use of the test in forensic assessments"); Natacha Godbout, Monica Hodges, John Briere, and Marsha Runtz, Structural Analysis of the Trauma Symptom Inventory-2, 25 J. of Aggression, Maltreatment & Trauma 333, http://dx.doi.org/10.1080/10926771.2015.1079285 (determining that the TSI-2 factors are "significant predictors of exposure to trauma or some other very upsetting event, especially Posttraumatic Stress"); Esteban Puente-López, David Pina, Rubén López-Nicolás, Isabel Iguacel, and Ramón Arce, The Inventory of Problems-29 (IOP-29): A systematic review and bivariate diagnostic test accuracy meta-analysis, Psychological Assessment, 35(4), 339-352, https://doi.org/10.1037/pas0001209 (determining that, although further research was recommended, the results of an analysis of the accuracy of IOP-29 were "highly promising" and that the IOP-29 was "able to discriminate adequately between instructed simulators and healthy controls").

[4]    Specifically, plaintiff cites a 2024 article in the Journal of Forensic and Legal Medicine, which states that the PAI is "popular[] in forensic

In sum, there can be no doubt that Dr. Medlin is amply qualified to testify for defendants at trial. Plaintiff's motion to preclude Dr. Medlin from offering her written report or testifying at trial is denied.

Finally, plaintiff requests that Dr. Medlin be precluded from testifying about certain commentary concerning plaintiff's counsel that is contained in her report. Pl. Mot. at 2-3. Plaintiff's counsel contends that this commentary should be precluded under Fed. R. Evid. 403 and 702 as irrelevant, unfairly prejudicial, and likely to confuse the issues. Id. While Dr. Medlin's report certainly suggests that plaintiff's counsel exhibited unprofessional behavior during both of Dr. Medlin's examinations

---

settings[,]" and notes that it "continues to gather international recognition" and "its relevance and usefulness in forensic settings is generally accepted and acknowledged." Mauro Paulino, John F. Edens, Mariana Moniz, Octavio Moura, Daniel Rijo, Mario R. Simeos, Personality assessment inventory (PAI) in forensic and correctional settings: A comprehensive review, 103 J. of Forensic and Legal Medicine (2024), https://www.sciencedirect.com/science/article/pii/S1752928X24000234.

The only other article cited by plaintiff does not appear to be publicly available. See Megan Whitman, Kaci Holmes, Laura Elias, Bruce Cappo, and Yossef Ben-Porath, Incremental Validity of MMPI-3 and NEO PI-3 Scores in Public Safety Candidate Pre-employment Psychological Evaluations, 51 Criminal Justice and Behavior (2023), https://doi.org/10.1177/00938548231219809. However, the Abstract states that the study "evaluated the incremental validity of the [MMPI-3] and the [NEO PI-3] scores in predicting California Commission on Peace Officer Standards and Training dimension . . . ratings in public safety . . . pre-employment psychological evaluations[.]" Id. This summary suggests that this article is not relevant to this litigation, as plaintiff is neither a public safety officer nor being evaluated in the context of a pre-employment psychological evaluation.

of plaintiff, at this stage we agree that the admission of such information is not directly relevant to the issues to be presented at trial.[5]  Accordingly, we grant plaintiff's request to exclude any reference to plaintiff's counsel's behavior in Dr. Medlin's testimony.[6]

## II.    Defendants' Motion to Exclude the Testimony of Dr. Fayer and Dr. Otonichar

Defendants move to bar the admission of expert reports and testimony by Dr. Fayer and Dr. Otonichar under <u>Daubert</u> or, alternatively, request that the Court order a <u>Daubert</u> hearing to

---

[5]    It should be noted that the Court previously issued two letters setting forth criteria for Dr. Medlin's evaluation of plaintiff due to plaintiff's counsel's interruption of her initial examination.  <u>See</u> ECF Nos. 109, 112. On the day that plaintiff's counsel interrupted the <u>first</u> examination conducted by Dr. Medlin, the Court held a telephone conference at which it supported the termination and stated that the examination could not proceed without a stipulation entered into by both parties and signed by the Court. <u>See</u> ECF No. 109.  After the parties failed to reach an agreement on the terms of this stipulation, <u>see</u> ECF Nos. 106-08, the Court provided specific criteria for the conditions pursuant to which Dr. Medlin's next examination of plaintiff should occur, <u>see</u> ECF Nos. 109, 112.

[6]    We need not address plaintiff's argument that defendants violated Rule 26(a)(2)(B) by allegedly failing to provide two pages of Dr. Medlin's expert disclosure, as defendants have provided more than sufficient evidence to show that they provided plaintiff's counsel with the full expert disclosure, including the two purportedly missing pages, on January 14, 2025 and February 14, 2025.  <u>See</u> Defs. Reply at 6.  Accordingly, plaintiff's argument is moot.

In their reply, defendants requested that the Court sanction plaintiff's counsel for representing to the Court that certain pages were missing from defendants' expert disclosure when they were, in fact, provided to plaintiff's counsel on two separate occasions. <u>Id.</u> at 6-7.  While we decline to proceed with sanctions against plaintiff's counsel at this time, we note for the record that this is only the latest in a series of professionally questionable actions taken by plaintiff's counsel in the course of this litigation.

determine the reliability of their testimony. <u>See</u> ECF No. 159 ("Defendants' Motion," or "Defs. Mot.") We address each of defendants' arguments in turn.[7]

### a. Dr. Otonichar

First, defendants contend that Dr. Otonichar's credentials "simply do not meet the standard" set forth in Fed. R. Evid. 702(a). We disagree. Dr. Otonichar's advanced education in psychiatry and his work experience, including as Medical Director of Mental Health at NYC-HHC Correctional Health Services and Clinical Assistant Professor in the Department of Psychiatry at New York University School of Medicine, undoubtedly qualify as "specialized knowledge" gained through "experience, training, or education" within the meaning of Rule 702. ECF No. 162-4 at 45. Accordingly, defendants' motion to preclude Dr. Otonichar's testimony on this basis is denied.[8]

---

[7]     Defendants also contend that plaintiff's expert disclosures violated Fed. R. Civ. P. 26(a)(2)(B) because they did not include a list of all cases in which Dr. Otonichar and Dr. Fayer testified in the previous four years, including testimony before administrative agencies, and because plaintiff's counsel failed to disclose the existence of either expert's handwritten notes prior to their depositions. Defs. Mot. at 1-7. While the Court finds it difficult to understand why these purported omissions are the subject of a motion <u>in limine</u> rather than having been raised during discovery, plaintiff's counsel is directed to provide defendants' counsel with any documentation or information subject to disclosure under Rule 26(a)(2)(B) that has not yet been provided for their review.

[8]     Defendants contend that Dr. Otonichar's credentials are inadequate because he has not previously testified in a civil or criminal proceeding. Defs. Mot. at 9. Neither Fed. R. Evid. 702 nor <u>Daubert</u> requires an expert to have previously testified in a court proceeding. This argument is

Defendants further assert that Dr. Otonichar's methodology is unsupportable, claiming that he conducted two Zoom interviews of the plaintiff in January and February 2024 lasting a combined total of four hours and "has not spoken to or engaged in any conversation" with the plaintiff since that time.  Defs. Mot. at 8.  However, in preparing his written report, Dr. Otonichar reviewed:  (i) psychiatric treatment records of Dr. Robert A. Reff, M.D. between July 2016 and January 2024; (ii) psychiatric treatment records of Dr. Wilson between August 2016 and January 2024; (iii) the psychiatric examination report of Dr. Fayer dated November 9, 2021; (iv) testimony and exhibits from the

---

nonsensical.  Why would an expert who had not testified before be precluded, as opposed to a "professional witness" who has testified dozens of times, always for one side?

Similarly, to the extent defendants contend that Dr. Otonichar is not qualified to opine on plaintiff's symptoms of PTSD because he has not previously been called to testify regarding PTSD, Dr. Otonichar's curriculum vitae demonstrates that he has extensive experience in treating and evaluating patients suffering from various psychological and psychiatric conditions.  See ECF No. 162-4 at 44-50.  Further, he testified that he has treated patients who have been diagnosed with PTSD and previously evaluated an individual who experienced symptoms of PTSD when he retained in connection with another lawsuit.  ECF No. 162-5 at 22, 32-33.  This work experience, when considered in connection with Dr. Otonichar's credentials, is more than sufficient to establish that he is qualified to serve as an expert in this proceeding.  See Colon ex rel. Molina v. BIC USA, Inc., 199 F. Supp. 2d 53, 73 ("An expert's training need not narrowly match the point of dispute in the case.") (internal quotation and citation omitted); Tardif v. City of New York, 344 F. Supp. 3d 579, 598 (S.D.N.Y. 2018) ("If an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.")

deposition of plaintiff on January 8, 2021; and (v) the
pleadings and procedural filings in this action.  ECF No. 167
("Plaintiff's Reply," or "Pl. Reply") at 15-16.  Dr. Otonichar's
review of plaintiff's medical records spanning approximately
eight years, in conjunction with his own evaluation, is
sufficient to meet the requirements of Rule 702(a).[9]  See
Daubert, 509 U.S. at 588-89 (the Federal Rules of Evidence take
a "general approach of relaxing the traditional barriers to
opinion testimony [that] counsels in favor of admissibility")
(quotations and citations omitted).

Finally, defendants assert that Dr. Otonichar's report
contains "no opinion on the issues of causation or permanency,"
and that he must be precluded from offering opinions to the jury
on those issues.  Id.  We disagree.  Dr. Otonichar clearly
addresses both causation and permanency in his report.
Specifically, he states that plaintiff experienced a "new type
of anxiety" as a result of the assault, which took the form of a

---

[9]    Defendants cite Morritt v. Stryker Corporation, 973 F. Supp. 2d 177
(E.D.N.Y. 2013) to support their assertion that Dr. Otonichar has not
sufficiently set forth an established methodology used to reach his opinion.
However, the Court in that case, which involved a medical device alleged to
be defective, determined that the expert at issue had not "establish[ed] a
threshold level of competency" in forming his opinion that a defect had
caused the medical device to fail, noting that he did not analyze or test the
device or observe it under a microscope.  Id. at 189.  Given the widely
differing facts at issue in this litigation, which focuses on plaintiff's
psychiatric condition, this case is inapposite.

"fear of intimacy and romantic relationships."  ECF No. 162-4 at

39.  He also writes that she experienced "anxiety and trauma

symptoms that are often seen with [PTSD]," including flashbacks

to the incident, isolation, mistrust, fear, anger, and

irritability.  Id. at 39-40.  Dr. Otonichar describes each of

these symptoms as arising after the assault and rules out other

causes that may have contributed to increased anxiety and

depression following the incident, writing that, although

plaintiff "experienced numerous other stressors around the time

of the referenced incident . . . those experiences could not

have caused the specific symptoms of sexual trauma that she

suffered."  Id. at 40-41.  He further states that, while these

symptoms have "more recently improved over time[,]" "she

continues to have residual symptoms related to the trauma from

the referenced incident."  Id.  Accordingly, defendants' request

to preclude Dr. Otonichar from testifying on issues of causation

and permanency is denied.[10]  Any concerns regarding the depth or

form of his evaluation goes to the weight of his testimony,

---

[10]    Defendants also claim that Dr. Otonichar failed to perform a
"differential diagnosis" of plaintiff despite her psychiatric history.  Defs.
Mot. at 13-14.  However, as stated above, Dr. Otonichar's report extensively
summarizes her extensive psychiatric history and the symptoms associated with
her pre-existing psychiatric conditions.  He also identifies "new" symptoms
that arose after her assault, including flashbacks, isolation, mistrust,
fear, anger and irritability.  ECF No. 162-4 at 39-40.  Accordingly,
defendants' assertion that this history was "ignored" by Dr. Otonichar in
reaching his medical conclusions is unpersuasive.  Defs' Mot. at 14.

rather than its admissibility, and may be addressed on cross-examination.

### b. Dr. Fayer

Next, defendants contend that Dr. Fayer must also be precluded from testifying at trial, asserting that his proposed testimony does not meet the requirements of Rule 702(b-d). Defs. Mot. at 16-20.

First, defendants assert that Dr. Fayer's methodology was insufficient, contending that he: (i) interviewed plaintiff for a total of four hours via Zoom on September 29, 2021 and October 20, 2021, and has had no further contact with plaintiff or reviewed any additional medical records since that call; (ii) did not review medical records from plaintiff's primary treating psychologist after December 15, 2020 or records from plaintiff's primary treating psychiatrist covering the four treatment sessions immediately preceding the assault, and did not review the records of plaintiff's second treating psychiatrist, Dr. Wilson, or her other medical providers; and (iii) did not administer any tests in evaluating plaintiff's psychological condition. Defs. Mot. at 17-18. However, a review of Dr. Fayer's report indicates that he based his diagnosis of plaintiff's mental health conditions on his own examinations of

plaintiff and a review of her psychiatric treatment records with
Dr. Robert A. Reff.  ECF No. 162-1 at 16-28.  As stated above, a
review of such records, in combination with a personal
evaluation of plaintiff's condition, is consistent with the
standards for evaluation within the psychiatric community and
adequate to meet the requirements of Fed. R. Evid. 702(a).  See,
e.g., O'Loughlin v. USTA Player Dev. Inc., No. 14 Civ. 2194
(VB), 2016 WL 5416513, at *5 (S.D.N.Y. Sept. 28, 2016)
(admitting psychiatrist's expert testimony, which was based on
his review of the plaintiff's medical records, deposition
testimony, and a 75-minute interview of plaintiff and her
mother).  Accordingly, defendants' motion to preclude Dr.
Fayer's testimony on this basis is denied.

Defendants further argue that Dr. Fayer's expert report
contains "no opinion on the issues of causation or permanency,"
and that he must be precluded from offering opinions to the jury
on those issues.  Defs. Mot. at 18.  However, there is no need
to limit Dr. Fayer's testimony on this basis, as his report
addresses both causation and permanency.  He states that, as a
result of the assault, plaintiff developed "trauma-induced
anxiety with features of posttraumatic stress[,]" including
"flashbacks, dreams . . ., negative thoughts, avoidance, and

isolation[.]"  ECF No. 162-1 at 27.  Dr. Fayer further
determined that plaintiff would require "ongoing psychiatric
treatment . . . as a result of the incident that occurred."  <u>Id.</u>
Accordingly, Dr. Fayer's expert report adequately addresses both
causation and permanency, and defendants' motion to limit Dr.
Fayer's testimony with respect to these topics is denied.

In sum, Dr. Fayer's opinion is grounded in a reliable
methodology commonly accepted in the psychiatric community, and
defendants' motion to preclude Dr. Fayer's testimony is denied.
Any concerns regarding the depth or form of his evaluation goes
to the weight of his testimony, rather than its admissibility,
and may be addressed on cross-examination.

### c. FRCP Rule 403

Finally, defendants contend that the testimony of Dr. Fayer
and Dr. Otonichar should be precluded or limited as duplicative
under Fed. R. Evid. 403, asserting that both witnesses "will
present predominantly duplicative testimony."[11]  Defs. Mot. at
19.  Specifically, defendants claim that the two expert
disclosures are based upon a review of substantially the same

---

[11]    Fed. R. Evidence 403 provides that "[t]he court may exclude relevant
evidence if its probative value is substantially outweighed by a danger of
one or more of the following: unfair prejudice, confusing the issues,
misleading the jury, undue delay, wasting time, or needlessly presenting
cumulative evidence."

medical and legal records, similar examinations of the
plaintiff, and reach similar conclusions, asserting that "to
permit two experts to testify upon the same ground, using the
same bases for their testimony, a jury could simply engage in
the improper head counting of experts and decide against the
Defendants' expert simply on the basis of her being one
testifying expert as opposed to two."   Id.

Plaintiff, however, asserts that testimony from the two
experts is not needlessly cumulative because the two experts
examined plaintiff at different times.  Pl. Reply at 21-22.  Dr.
Fayer examined plaintiff approximately three years after the
assault, on September 29, 2021 and October 20, 2021.  ECF No.
162-1 at 16.  Dr. Otonichar, meanwhile, conducted his
examination of plaintiff more than five years after the assault,
on January 18, 2024 and February 7, 2024.  ECF No. 162-4 at 6.
Plaintiff contends that Dr. Fayer's testimony will address the
"acute impact" of the assault, while Dr. Otonichar's testimony
will focus its "the chronic and enduring impact" and plaintiff's
"sustained psychiatric impairment and deterioration in
functioning[.]" Pl. Reply at 21-22.  Because the two experts
examined plaintiff three years and five years after the assault,
respectively, and are expected to testify regarding their

separate conclusions with respect to plaintiff's psychological condition at each point in time, we agree that the proposed testimony is neither cumulative nor duplicative.[12]

### CONCLUSION

For the foregoing reasons, the parties' motions are denied. The Clerk of Court is respectfully directed to close the motions currently pending at ECF Nos. 158-59, 162-65.

Dated:    June 30, 2025
          New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[12]    Defendants cite two cases in support of their request to preclude plaintiff's proposed expert testimony as needlessly cumulative.  In Country Mutual v. Broan Nutone LLC, No. 20 Civ. 1356 (DNH), 2024 WL 7324516 (N.D.N.Y. Nov. 7, 2023), the court precluded two experts who collaborated on a joint report from offering cumulative testimony regarding the same report at trial. Where, as here, the two experts at issue prepared different reports based on separate examinations, this case is inapposite.  In US Airways, Inc. v. Sabre Holdings Corp., No. 11 Civ. 2725 (LGS), 2022 WL 986232 (S.D.N.Y. Apr. 1, 2022), the district court granted plaintiff's motion to bar duplicative opinions from two experts on four subjects pertaining to airline incentive payments and commissions to travel agents.  Here, the testimony proffered by Dr. Otonichar and Dr. Fayer concerns their independent evaluations of plaintiff's psychological condition, performed in 2021 and 2024, respectively.  Given the timing of the experts' examinations, their differing focuses, and the subjective nature of a psychological evaluation, we decline to preclude the proposed testimony from either expert as cumulative or duplicative.

-21-