UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MARGARET BETTS,

                    Plaintiff,

     - against –                          **MEMORANDUM AND ORDER**

                                           20 Civ. 4772 (NRB)
SIXTY LOWER EAST SIDE, LLC,
SIXTY HOTELS, LLC, and SIXTY
HOTEL MANAGER, LLC,

                    Defendants.
------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     This is an appeal from a jury verdict awarding compensatory damages to Margaret Betts ("plaintiff"), who was sexually assaulted on October 19, 2018 by a massage therapist engaged by and sent to her hotel room by Sixty LES (the "Hotel").[1]  Before sending the masseur, Iouri Astakhov ("Astakhov"), to Ms. Betts' guest room, the Hotel failed to investigate whether he was licensed or authorized to practice massage therapy -- as required by New York State law.  On July 17, 2025, nearly seven years after her assault, a jury awarded Ms. Betts $1 million in past and $375,000 in future pain and suffering damages, having apportioned fault 50%

---

[1]     Sixty Lower East Side, LLC, Sixty Hotels, LLC, and Sixty Hotel Manager, LLC (together, "defendants") were the owners and managers of the Hotel at the time of Ms. Betts' assault.  For purposes of this opinion the Court will, unless otherwise indicated, use the terms "Hotel" and "defendants" interchangeably.

1

to 50% between non-party Astakhov and the Hotel.[2]  Verdict Form at 2-6.  The final judgment entered by the Court on July 22, 2025 also awarded $237,677.81 in pre-judgment interest to Ms. Betts. ECF No. 206 at 2-3.  Pre-judgment interest began accruing when the Court, on August 21, 2023, granted summary judgment to Ms. Betts on liability, finding that the Hotel (i) was negligent per se for violating New York Education Law § 7802 and (ii) proximately caused plaintiff's harm by failing to verify if Astakhov was licensed or authorized to practice before soliciting his services.  See Betts v. Sixty Lower E. Side, LLC, No. 20 Civ. 4772 (NRB), 2023 WL 5352334, at *7-10, 13 (S.D.N.Y. Aug. 21, 2023) ("SJ Opinion"), appeal withdrawn, No. 23-1289, 2024 WL 1152438 (2d Cir. Jan. 22, 2024), and motion to certify appeal denied, No. 20 Civ. 4772 (NRB), 2024 WL 3104323 (S.D.N.Y. June 24, 2024).

The Hotel filed several post-trial motions, which are addressed in this opinion.  First is the Hotel's Rule 59(e) motion

---

[2]    The Court granted the Hotel's pre-trial request for a jury instruction and verdict form providing for the apportionment of fault pursuant to CPLR § 1601.  Betts v. Sixty Lower E. Side, LLC, No. 20 Civ. 4772 (NRB), 2025 WL 1869447, at *3 (S.D.N.Y. July 7, 2025); see also ECF No. 218-3 ("Trial Tr.") at 384:4-11.  Section 1601 provides that in "action(s) involving two or more tortfeasors," a defendant may seek apportionment of damages "in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss."  At the conclusion of trial, the jury nominally awarded $2,000,000 in past damages and $750,000 in future damages to plaintiff. ECF No. 218-4 ("Verdict Form") at 2-3.  However, in the apportionment section of the Verdict Form, the jury only found the Hotel 50% at fault, id. at 6, thus reducing defendants' effective liability to a total of $1,375,000 in past and future damages, before interest.

to vacate the Court's summary judgment decision on liability.  ECF No. 219 ("Mot.") at 2; <u>see</u> Fed. R. Civ. P. 59(e).  Also, the Hotel moves to reduce the jury's apportionment verdict and damages award pursuant to Rule 59(e) or, in the alternative, for a new trial pursuant to Rule 59(a)(1)(A).[3]  <u>Id.</u>

## Background[4]

The essential facts of this case are not -- and never were -- disputed.  Ms. Betts was a registered guest at the Hotel in New York City from October 19 to October 21, 2018.[5]  The Hotel offered

---

[3]    On August 7, 2025, plaintiff's counsel filed a two-page "notice of motion" for "additur."  ECF No. 222 at 1.  While counsel promised to file a supporting brief "at a later date," <u>id.</u>, no brief was ever filed.  Although this Court is well-familiar with letter motions and does not always require full and formal briefing, the filing of a naked notice of motion without any supporting authority or reasoning does not merit a response and may be considered as an abandonment of the proposed motion.  Moreover, even if the Court were obliged to address plaintiff's notice of motion, it would be denied.  The Supreme Court has held that while orders for remittitur are generally permissible following a jury verdict, "additur [i]s unconstitutional" under the Seventh Amendment. <u>Gasperini v. Ctr. for Humans., Inc.</u>, 518 U.S. 415, 433 (1996)(citing <u>Dimick v. Schiedt</u>, 293 U.S. 474, 486-487 (1935)); <u>see also</u> <u>Fox v. City Univ. of New York</u>, No. 94 Civ. 4398 (CSH), 1999 WL 33875, at * 11 (S.D.N.Y. Jan. 26, 1999) ("[E]ven in a diversity case presenting only state law claims, a federal trial judge cannot make an order of additur, even though his state court colleague could. [U]nless and until the Supreme Court overrules <u>Dimick v. Schiedt</u>, a state statute such as [CPLR] § 5501(c) cannot trump the United States Constitution.").

[4]    In considering the Hotel's challenge to the Court's summary judgment decision, <u>see</u> <u>infra</u>, Discussion Section I, the Court references the plaintiff's Local Civil Rule 56.1 statement ("Pl. 56.1"), ECF No. 57; defendants' Local Civil Rule 56.1 counterstatement ("Def. Counter 56.1"), ECF No. 62; defendants' Local Civil Rule 56.1 statement ("Def. 56.1"), ECF No. 63-1; plaintiff's Local Civil Rule 56.1 counterstatement ("Pl. Counter 56.1"), ECF No. 66-1.  In considering defendants' challenge to the jury verdict, <u>see</u> <u>infra</u>, Discussion Section II, the Court references the trial transcript, the Verdict Form, filings cited in the parties' briefing, and any evidence properly admitted at trial.

[5]    <u>See</u> Def. 56.1 ¶¶ 10, 37; Pl. Counter 56.1 ¶ 10, 37.

an on-premises spa, available "exclusively to hotel guests," which
it advertised in a spa "menu" placed in each room.  SJ Opinion at
Appendix A (the "Spa Menu").  However, due to the limited capacity
of the dedicated spa, the "Spa Menu" also offered in-room massages,
which were advertised directly adjacent to the "in-spa" option.
Spa Menu at 1 (advertising "customized massage[s] . . . [a]vailable
in [the guest's] room").  On October 19, 2018, Ms. Betts requested
an in-room massage by calling the front desk.[6]  Hotel staff
contacted Valeryia Vasilets, an outside massage therapist on their
existing list, who was unavailable.[7]  Vasilets then contacted
Astakhov, who responded that he was available, and referred him to
the Hotel.[8]  It is undisputed that Astakhov obtained a license to
practice massage therapy on October 1, 2008, but that he failed to
re-register, as required by law, on November 30, 2013, and has not
done so since.[9]  It is likewise undisputed that although Astakhov
had provided massage services at the Hotel before, the Hotel made
no effort to verify at any time whether he was properly authorized
as a masseur under New York's licensure statute.

---

[6]    Def. 56.1 ¶¶ 12, 15; Pl. Counter 56.1 ¶¶ 12, 15.

[7]    Def. 56.1 ¶¶ 14, 16-17; Pl. Counter 56.1 ¶¶ 14, 16-17.

[8]    See Def. 56.1 ¶ 17.

[9]    See Verification Search, N.Y. Education Dep't, https://www.op.nysed.gov
/verificationsearch?licenseNumber=022139&professionCode=027  (last  accessed
October 21, 2025); SJ Opinion at Appendix B.

After Astakhov's arrival, the Hotel directed him to plaintiff's room.[10]  Then, Ms. Betts removed her clothing and lay down on the massage table.[11]  While in this vulnerable position, she was sexually assaulted.  As described by Ms. Betts:

> During the massage I was laying on my stomach and I fell asleep.  And I woke -- I was kind of -- I was groggy waking up, and I felt the massage therapist's hand come all the way up my thigh and then he brought his finger inside my vagina, and it felt rough, and then took it out and massaged down.  The next thing he did is he took his other hand and did the same thing.  Afterwards, he finished the massage on -- that he was doing as I was on my stomach, and on my back he pinched my nipple.  He started massaging my shoulders and he pinched my nipple, and he did -- a friend of mine said, I guess, the best example, a drive-by on the top of my pubic region, pubic hair, my vagina.  He took his hand and brush brushed it over it. . . . I froze.  During the massage, I froze.[12]

Ms. Betts subsequently reported her assault to the Hotel and to the police.[13]  However, since the Hotel failed to retain any contact information for Astakhov, he was not identified until Valisets' deposition two-and-a-half years later.[14]

## Procedural History

On June 22, 2020, plaintiff filed a complaint asserting a single negligence claim against defendants.  ECF No. 1.  After years of discovery and an unsuccessful attempt at mediation, _see_

---

[10]     Pl. 56.1 ¶ 38.

[11]     ECF No. 1 ¶¶ 30, 33, 58(a).

[12]     Trial Tr. at 23:15-24:4.

[13]     Def. 56.1 ¶¶ 38, 39; Pl. Counter 56.1 ¶¶ 38, 39; ECF No. 64 at 1.

[14]     _See_ ECF No. 63-11 at 22:2-8.

ECF Nos. 45, 53, on August 21, 2023, the Court entered summary judgment in favor of plaintiff on the issue of liability.  <u>See</u> SJ Opinion.  Defendants did not move for reargument of the summary judgment decision.[15]

Following the entry of summary judgment, the parties conducted discovery on the issue of damages.  The Court held two settlement conferences on January 16, 2025, ECF No. 88, and March 11, 2025, ECF Nos. 146, 147, in an attempt to resolve the case short of trial.  After those efforts failed, the Court scheduled a jury trial to commence on July 14, 2025.  The parties filed six motions in limine, ECF Nos. 158, 159, 176, 184, 197, 199, all of which the Court resolved prior to trial.  <u>See</u> ECF Nos. 179, 188, 189, 200, 201, 204.  Only two of the pre-trial motions in limine are relevant here: (i) defendants sought a jury charge and verdict form apportioning fault between Astakhov and the Hotel pursuant to CPLR § 1601, which the Court granted, ECF No. 189; (ii) defendants also moved for a missing witness charge for Dr. Robert Reff, one of plaintiff's treating physicians, which the Court denied, ECF No. 188.

---

[15]     Months later, defendants did file a motion to certify the Court's negligence <u>per se</u> finding for interlocutory appeal.  <u>See</u> ECF No. 90.  We denied the motion because "a reversal of the [negligence <u>per se</u> holding] would not materially advance the ultimate termination of the litigation, as issues of liability would remain, albeit under a different [common law] standard, for resolution at trial."  <u>Betts</u>, 2024 WL 3104323, at *2.

At trial, the jury heard testimony from plaintiff, plaintiff's expert psychiatrist, Dr. Joseph Otonichar, and defendants' expert psychologist, Dr. Julie Medlin, regarding plaintiff's various medical conditions and the impact of the Astakhov's assault on plaintiff. See Trial Tr. at 23-31, 48-95, 168-291. Defendants were not precluded from calling any witness. Also, defense counsel had the opportunity to cross-examine plaintiff but chose not to do so. Id. at 31:6. On July 15, 2025, two days before charging the jury, the Court provided a copy of its draft jury charge and verdict form to the parties at the conclusion of the day's trial testimony. Id. at 99:16-22. After counsel had taken the lunch break to review these documents, the Court heard and addressed defense counsel's objections.[16] Id. at 103, 108-129.

On July 17, 2025, after deliberating for approximately three hours, including time for lunch, the jury returned a verdict in favor of plaintiff. See Verdict Form. On August 1, 2025, defendants filed the instant motion to vacate the Court's summary judgment opinion, to alter or amend the jury verdict, or for a new

---

[16]     Defense preserved three objections to the charge. See Trial Tr. at 117:7-10, 125:14-127:24, 129:3-7.  None of these objections has even been mentioned in the post-trial briefing.

trial.[17]  ECF Nos. 217, 218, 219.  On September 8, 2025, plaintiff filed an opposition to defendants' motion, ECF No. 230 ("Opp."), and on September 15, 2025, defendants replied, ECF No. 234 ("Reply").

## Discussion

Altering or amending a judgment pursuant to Rule 59(e) is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  USA Certified Merchants, LLC v. Koebel, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  A litigant must "satisf[y] the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Hollander v. Members of Bd. of Regents of Univ. of N.Y., 524 Fed.Appx. 727, 729 (2d Cir. 2013) (citation and internal quotation marks omitted); see also Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d

---

[17]     On August 21, 2025, after the Rule 59 motions had been filed, both parties filed notices of appeal, ECF Nos. 223, 224, 225, which are properly treated as a "nullity."  "[T]he Supreme Court has held that a notice of appeal filed after a motion is made to alter or amend a judgment [under Rule 59], and before the district court acts on that motion, is 'a nullity.'"  Nw. Nat. Ins. Co. of Milwaukee, Wisconsin v. Alberts, 937 F.2d 77, 81 (2d Cir. 1991) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61 (1982)); see also Cameron v. Cunningham, No. 13 Civ. 5872 (KPF), 2014 WL 5365978, at *1 (S.D.N.Y. Oct. 22, 2014) (concluding that the court "retains jurisdiction to entertain Petitioner's [Rule 59(e)] motion notwithstanding the notice of appeal he has filed").

Cir. 2008).  Rule 59(e) is neither a "second bite at the apple" for a dissatisfied party, Davidson v. Scully, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2001) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)), nor a vehicle to advance theories a party failed to articulate in the underlying motion, see Griffin Ins., Inc. v. Petrojam, Ltd., 72 F.Supp.2d 365, 368 (S.D.N.Y. 1999). Importantly, motions to alter or amend lie within the sound discretion of the district court.  Id.

"[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . view the jury's verdict as against the weight of the evidence." Manley v. AmBase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003) (internal citations and quotation marks omitted). "[A] high degree of deference [is] accorded to the jury's evaluation of witness credibility, and [thus] jury verdicts should be disturbed with great infrequency." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012). In short, "[a] court considering a Rule 59 motion for a new trial . . . should only grant such a motion when the jury's verdict is egregious." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (citation and internal quotation marks omitted).

## I. Defendants' Motion to Vacate the Summary Judgment Decision or for a New Trial on Liability

The Hotel moves pursuant to Rules 59(e) and (a) to vacate the Court's summary judgment decision or for a new trial on liability. Mot. at 2. Despite the complete absence of intervening controlling law or new facts,[18] the Hotel reiterates previously-raised arguments, insisting that the Court committed "clear error." We will consider these arguments seriatim.

### a. Violation of Section 7802

We begin with the Hotel's argument that it did not violate Section 7802 of the New York Education Law by sending Astakhov, an unregistered massage therapist, to plaintiff's hotel room. <u>See</u> Mot. at 13-15; SJ Opinion at *7-10. Section 7802 reads as follows:

> Only a person licensed or authorized pursuant to this chapter shall practice massage therapy[.] No person, firm, partnership or corporation claiming to be engaged in the practice of massage or massage therapy shall in any manner describe, advertise, or place any advertisement for services as defined in [Section 7801] of this article unless such services are performed by a person licensed or authorized pursuant to this chapter.

---

[18] All the arguments now advanced by defendants could have, and should have, been raised in defendants' original summary judgment briefing or, if appropriate, in a subsequent motion for reargument. <u>See</u> Local Civil Rule 6.3. At summary judgment, defendants had access to the same set of liability-related facts as they do now, including (i) Astakhov's licensing history, (ii) the Hotel's actions and knowledge before sending Astakhov to plaintiff's room, (iii) the "Spa Menu" advertising "in-room" treatments, and (iv) the caselaw upon which they now rely. The jury trial recently conducted on the issue of <u>damages</u> generated no new facts relevant to <u>liability</u>. Consequently, defendants have misused Rule 59, which "is not a vehicle for . . . taking a second bite at the apple." <u>Griffin Ins., Inc.</u>, 72 F.Supp.2d at 368 (internal quotation marks omitted).

N.Y. Education Law § 7802; see also Title 8, Article 155, which spans §§ 7800-7807 (regulating the practice of massage therapy).

The Hotel contends that it "[never] claimed to be engaged in in-room massage services," but rather "advised guests that in-room services were supplied by 'independent professionals.'"  Mot. at 14.  The Court previously considered -- and rejected -- the same argument at summary judgment, explaining that "Section 7802 does not limit its applicability to only entities that employ massage therapists" directly.  SJ Opinion at *9.  Here, the Hotel advertised the "in-room" treatments alongside the "in-spa" treatments, and informed guests that the same "customized massage" available at the spa was "[a]lso available in your room."  Spa Menu at 1.  Moreover, the nominally "independent" massage therapists were selected by the Hotel and performed their services on Hotel premises.  SJ Opinion at *9; Mot. at 14.

Next, the Hotel argues that because the statutory language is disjunctive -- therapists must be "licensed or authorized" -- and because a massage therapy license is granted "for life," Astakhov was "licensed" as required by Section 7802.  Mot. at 14-15.  The Hotel raised this exact argument at summary judgment, and it was explicitly rejected.  See SJ Opinion at *9.  As we previously stated, "[i]t is settled that 'or' may be read to mean 'and' when the context so indicates."  SJ Opinion at *9 (quoting Willis v.

11

United States, 719 F.2d 608, 612-13 (2d Cir. 1983)).  Although "[a] license is issued for life," the plain language of the statute also mandates that "those who are licensed must register every three years to continue in active practice."  SJ Opinion at *7. Practicing without meeting this registration requirement is a felony, not merely a technical violation.  Thus, "permitting the practice of massage therapy by someone who is licensed but not registered to practice would clearly frustrate the legislative intent of Section 7802 as well as Article 155 more broadly."[19]  Id. at *9.

### b. Negligence Per Se

We next turn to the Hotel's argument that the Court erred when it found its violation of Section 7802 constituted negligence

---

[19]    Defendants urge the Court to "read [the statute] as a whole" and focus on the "plain language."  Mot. at 14.  That is exactly what the Court has done. Even under a "plain language" approach, Section 7807 of the Education Law, which bars unregistered but licensed massage therapists from practice, must be considered.  "[T]he cardinal rule [is] that . . . statutory language, plain or not, depends on context."  King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991).  In this context, "it is simply inconceivable that Section 7802 [wa]s intended to create a new exception for unregistered massage therapists" because "practice in New York [by licensed, but unregistered, masseurs] is explicitly banned."  SJ Opinion at *9 (citing N.Y. Education Law § 7807 ("Each massage therapist licensed pursuant to this article [is] required to register triennially with the department to practice in the state," and "shall not practice until they have met such [registration] requirements, and they have been issued a registration certificate.") (emphasis added); Professional Misconduct Enforcement, N.Y. Education Dep't, https://www.op.nysed.gov/enforcement/professional-misconduct-enforcement (last accessed November 24, 2025) ("[p]racticing a profession without a license and current registration is a felony in New York State.") (emphasis added)).  "[C]ourts must give effect . . . to every clause and word of a statute," Barbera v. Grailed, LLC, No. 24 Civ. 3535 (LJL), 2025 WL 2098635, at *9 (S.D.N.Y. July 25, 2025) (internal citation and quotation marks omitted), and thus, Section 7802 cannot be read to render meaningless the registration requirement in Section 7807.

per se.  Mot. at 15-16.  The Hotel cites two non-binding trial
court cases -- both of which were available to defendants at the
summary judgment stage -- to argue that Section 7802 was not
"enacted to protect a specific class of people," Mot. at 16
(quoting Doe v. Spa, 2003 NYLJ LEXIS 974, at *4 (N.Y. Sup. Ct.
2003)), and does not "set forth a specific standard of care," id.
(quoting Revercomb v. Aire Ancient Baths S.L., 2019 N.Y. Misc.
LEXIS 1567, at *23 (N.Y. Sup. Ct. 2019)).

    Spa and Revercomb are not "get out of jail free" cards, both
because they are non-binding decisions, and because they are
contradicted by other New York cases.  "When a statute [is]
designed to protect a particular class of persons against a
particular type of harm . . . , a court may, in furtherance of the
statutory purpose, interpret the statute as creating a[] standard
of care" and find defendants "negligent per se."  Auz v. Century
Carpet, Inc., No. 12 Civ. 417 (LGS), 2014 WL 199511, at *3
(S.D.N.Y. Jan. 17, 2014) (quoting Dance v. Town of Southampton,
467 N.Y.S.2d 203, 206 (2d Dep't 1983)) (emphasis added).  Put
differently, when a statute is "designed to protect a particular
class of persons against a particular type of harm" the statutory
provision and the "standard of care" merge.  Id.  In this context
we quoted Dillon v. Kim in our summary judgment decision: "the
purpose . . . of Article 155 of the Education Law, which provides

for the licensure of persons practicing the profession of massage
. . . is to insure the welfare and safety of persons seeking, not
touching of a sexual nature, but rather massage therapy free of
sexual or other inappropriate contact." SJ Opinion at *10 (quoting
Dillon v. Kim, 158 Misc. 2d 711, 717 (Sup. Ct., Nassau Cnty., June
23, 1993)). "A person who receives massage therapy in their . .
. hotel room relies upon the licensure statutes . . . to protect
him or herself from harmful and/or sexual touching." Dillon, 158
Misc. 2d at 717; see also Ezagui v. Dow Chemical Corp., 598 F.2d
727, 733 (2d Cir. 1979) (finding that a violation of the New York
Education Law can constitute negligence per se).[20] Thus, this
Court properly found that the Hotel's violation of Section 7802 of
Article 155 constituted negligence per se, and any modification of
that holding is unwarranted.

---

[20]    Defendants claim that "this Court . . . announced having 'made law'" by
finding them negligent per se. Mot. at 16 (citing Trial Tr. at 44:5).
Defendants' challenge prompts the following commentary. Had we not found
negligence per se, we would have, given the serious facts, devoted additional
consideration to the common law negligence claim. Instead, we applied existing
case law on common law negligence, which generally holds that a "reasonably
prudent person" does not have an obligation to conduct a background check on a
prospective employee, see SJ Opinion at *12-13 (citing KM v. Fencers Club, Inc.,
164 A.D.3d 891, 893 (2d Dep't 2018)), without addressing whether existing
precedent was fully analogous to the facts in this case. Had our focus been on
the common law negligence claim, the Court can state with some confidence that
we would have held defendants liable: the act of sending a masseur to Ms. Betts'
room where she would be unclothed, without even verifying his contact
information, let alone his licensing status, would be negligent at common law,
and defendants' actions distinguishable from existing caselaw.

### c. Proximate Cause

Next, the Hotel argues that because proximate cause is "fact-specific" and generally resolved by the jury, the Court erred when it found the Hotel proximately caused plaintiff's injuries. Mot. at 17-18. Again, we explicitly addressed this argument in our summary judgment decision, where "we acknowledge[d] that the issue of proximate cause is usually determined by a jury," but explained that "where, as here, the facts are undisputed, the question becomes one for the court." SJ Opinion at *10 (quoting Comolli v. 81 & 13 Cortland Assocs. L.P., 285 A.D.2d 863, 864 (3d Dep't 2001) (internal citations omitted)). Indeed, the Hotel's own case, see Mot. at 17, makes clear that "[a]lthough foreseeability and proximate cause are generally questions for the factfinder, there are instances in which proximate cause can be determined as a matter of law because only one conclusion may be drawn from the established facts," Hain v. Jamison, 28 N.Y.3d 524, 529 (2016) (internal quotation marks omitted).

"[O]nly one conclusion may be drawn" from the undisputed facts here. Hain, 28 N.Y.3d at 529. The Hotel's actions were the proximate cause of plaintiff's injury because "if [the Hotel] had verified whether Astakhov was authorized to practice in New York, as is required under Section 7802, [it] would have learned he was not and thus could not have lawfully permitted Astakhov to perform

15

plaintiff's massage." SJ Opinion at *10. Likewise, "it was reasonably foreseeable that plaintiff's assault could result" because "the . . . registration requirements set forth in Article 155 are specifically intended, at least in part, to prevent sexual misconduct." Id. The Hotel cites no new or controlling caselaw that would compel a different result, instead opting to regurgitate arguments made in its summary judgment briefing.

## II. Defendants' Motion to Alter or Amend the Jury Verdict, or for a New Trial on Damages

In addition to challenging the Court's summary judgment decision on liability, the Hotel also moves to modify the apportionment verdict and reduce the damages award, or, in the alternative, for a new trial on damages. Mot. at 2. The Hotel argues (i) that the jury's apportionment of fault was "irrational and requires modification"; (ii) that the damages award was "excessive"; (iii) that plaintiff's counsel's summation was prejudicial; (iv) that the Court improperly denied the Hotel's request to read non-testifying expert Dr. Fayer's deposition testimony into evidence; and (v) that the Court improperly refused to issue a missing witness charge for Dr. Reff, a non-testifying treating psychiatrist. See id. at 18-25. The Court will address the Hotel's arguments in order.

**a. Apportionment**

CPLR § 1601 provides that in a "[personal injury] action involving two or more tortfeasors," a defendant may seek apportionment of damages "in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss." CPLR § 1602 lists a series of enumerated exceptions to Section 1601, including where a defendant seeking apportionment "acted with reckless disregard for the safety of others." CPLR § 1602(7). In an in limine motion, see ECF Nos. 178, 181, 182, the Hotel moved for an instruction pursuant to CPLR § 1601, to have the jury apportion fault between the Hotel on the one hand and non-party Astakhov on the other. The Court granted the Hotel's motion. See Betts, 2025 WL 1869447, at *3. The Court also rejected plaintiff's argument that the "recklessness" exception to apportionment applied, because "'negligence per se' is [not] the equivalent of 'recklessness' for the purposes of the § 1602(7) exception to § 1601."[21] Id.

As we explained, supra p. 2 n.2, the Hotel's liability was reduced from $2,750,000 to $1,375,000, when the jury found the

---

[21]    If defendants were to succeed in overturning the Court's finding of negligence per se on appeal, and if the Court were to focus its attention once again on common law negligence, see supra p. 14 n.20, it is possible the Court would find defendants "reckless" under a common law standard, and thus deny defendants the benefit of apportionment in any new trial. See CPLR § 1602(7) (denying apportionment to "reckless" defendants).

Hotel only 50% at fault.  Despite having benefitted from the apportionment charge, the Hotel now argues it should only be 5% responsible because a "non-negligent and vicariously liable premises owner cannot" be equally culpable as an intentional tortfeasor.  Mot. at 2, 18.

The Hotel's effort to avoid responsibility and shift virtually all responsibility to Astakhov through a post-trial motion must be viewed in the context of its decision not to add Astakhov as a third-party defendant, even after his identity was determined.  See ECF No. 63-11 at 22:2-8.  The Hotel opted to apportion fault to Astakhov in absentia.  While this approach was legally permissible, it is worth noting that defendants passed on an opportunity to find and depose Astakhov, and thus potentially persuade the jury that the Hotel was less at fault.[22]

Regardless, "[t]he apportionment of fault among the parties is . . . an issue of fact for the jury, and . . . should not be set aside unless it could not have been reached based upon a fair interpretation of the evidence."  Fruendt v. Waters, 164 A.D.3d 559, 560 (2d Dep't 2018).  As plaintiff rightly observes, the Hotel "select[ed], advertise[d] [and] sen[t] the tortfeasor to the

---

[22]    The Court well appreciates defendants' decision-making process.  However, having chosen a strategy, defendants have no basis to avoid the apportionment verdict reached by the jury.

plaintiff," yet failed to verify whether he was registered to practice massage therapy before doing so. Opp. at 16-17. In such circumstances, even an award that apportioned <u>greater</u> responsibility to the Hotel would have been reasonable. Thus, the jury's apportionment of equal fault was a "fair interpretation" of the evidence presented.[23]

The Hotel's attempts to characterize its actions as "non-negligent" are fruitless. Mot. at 18. First, the Hotel tacitly admits to a certain level of culpability by conceding that it is "5%" responsible. <u>Id.</u> Second, by asking the jury to apportion "fault," Verdict Form at 6, the Hotel, in essence, got a second opportunity to argue proximate cause. Yet the Hotel failed to convince the jury at trial -- just as it failed to convince the

---

[23]    During his summation, plaintiff's counsel repeatedly stated that "the hotel should be 100 percent responsible" and implied that the Court's summary judgment decision had already resolved the issue of apportionment. Trial Tr. at 363:8-18 ("MR. NAPOLI:  This would never have happened if they had properly checked him out . . . [t]hat's what the judge decided. . . . the hotel should be 100 percent responsible.  100 percent."); <u>see also</u> <u>id.</u> at 364:4, 364:20-22, 365:17-22. Defendants argue that these statements were prejudicial. Mot. at 19. However, there was no prejudice from plaintiff's counsel's comments. Defense counsel objected <u>immediately</u>, and we upheld the objection in front of the jury on at least four separate occasions. Trial Tr. at 363:22-23, 364:6-25, 365:6-7, 366:1-7. The Court also gave curative instructions to the jury, which clarified that apportionment was the <u>jury's</u> prerogative and that the Court had reached no prior decision on the issue. <u>See</u> Trial Tr. at 365:6-7 ("The Court:  The question on the [verdict] form [regarding apportionment] is the question you [the jury] will answer however you want to answer it."); <u>see also</u> <u>id.</u> at 7:13-8:5; 324:19-22; 405:4-12. A curative instruction was the only remedy defendants were entitled to under the law. <u>United States v. Coffey</u>, 823 F.2d 25, 28 (2d Cir.1987) ("[P]rompt curative instructions suffice[] to eliminate any unfair prejudice that might have resulted from a fact being placed unfairly before the jury.").

Court at summary judgment -- that it was not responsible for plaintiff's harm.  See SJ Opinion at *10; Verdict Form at 6.

Lastly, the Hotel's cited cases are easily distinguishable. See Roseboro v. N.Y. City Trans. Auth., 10 A.D.3d 524 (1st Dep't. 2004); Stevens v. N.Y. City Trans. Auth., 19 A.D.3d 583 (2d Dep't 2005).  Both cases involved third-party tortfeasors who were members of the general public, rather than a tortfeasor hired and sent by a defendant to a plaintiff's private room.  Roseboro, 10 A.D.3d at 525; Stevens, 19 A.D.3d at 584.  Moreover, in neither case was the defendant the "but-for" cause of plaintiff's injuries. See Roseboro, 10 A.D.3d at 525 (guard "slept at his post," but it was uncertain whether he could have stopped the assault by the third-party tortfeasor in time); Stevens, 19 A.D.3d at 584 ("train operator activated the emergency brak[e]. . . but was unable to stop in time" to avoid plaintiff, who was pushed onto the track by a third-party).  Here, there is no doubt that if the Hotel had verified Astakhov's registration status, and acted as required by statue, plaintiff's harm would never have occurred.  SJ Opinion at *10.

### b. Reasonable Compensation Under CPLR 5501(c)

We next turn to the Hotel's argument that the jury's damages award was excessive.  Mot. at 20-23.  At trial, the jury awarded $1 million in past and $375,000 in future damages.  Verdict Form

at 2-3; <u>see also</u> ECF No. 206.  Yet despite the seven years of
suffering Ms. Betts has endured since her assault in October 2018,
and despite the many years of future pain she will experience as
a consequence of this trauma, the Hotel urges the Court to reduce
her award to a wholly unrealistic, "five-figure amount."[24]  Mot.
at 22.

  "In considering a Rule 59 motion . . . where the court
exercises diversity jurisdiction, the court applies the governing
state law . . . regarding the appropriateness of a damages award."
<u>Vesely v. Long Island R.R. Co.</u>, No. 20 Civ. 2725 (PKC), 2022 WL
3974431, at *1 (S.D.N.Y. Sept. 1, 2022) (citing <u>Gasparini</u>, 518
U.S. at 420-21).  CPLR § 5501(c) states in relevant part that "[i]n
reviewing a money judgment in an action . . . [courts] shall
determine that an award is excessive . . . if it deviates
materially from what would be reasonable compensation."  "A
district court applying [CPLR § 5501(c)] reviews the evidence
presented at trial in support of the challenged damage award and

---

[24]    The $1 million awarded by the jury for past suffering amounts to
$142,857.14 per year for the seven years since plaintiff's assault in October
2018, hardly an unreasonable amount.  The $375,000 allocated for future damages
is even more reasonable, given that plaintiff will continue to experience PTSD
and other symptoms connected to the assault, potentially for decades to come.
The Court also notes that rather than settling the case, the Hotel <u>compounded</u>
its <u>own liability</u> by choosing to incur a 9% interest rate running from the date
of the summary judgment decision, which amounts to $237,677.81 in additional
liability beyond the $1,375,000 awarded by the jury.  <u>See</u> ECF No. 206 (awarding
a total of $1,612,667.81, including interest).

compares the award to [similar] New York cases." Rangolan v. Cnty.
of Nassau, 370 F.3d 239, 244 (2d Cir. 2004) (citation and internal
quotation marks omitted).  However, previous "awards are not
binding on the Court, but are merely instructive." Lewis v. City
of New York, 689 F. Supp. 2d 417, 430 (E.D.N.Y. 2010) (emphasis in
original); see also Vesely, 2022 WL 3974431, at *1-2 (finding
previous awards not "binding" under CPLR § 5501(c)).

Even if one assumed that jury verdicts in other, factually
unique cases are somehow binding,[25] which of course they are not,
the verdicts in the Hotel's cited cases do not differ materially
from the verdict reached here.  Mot. at 20-22.  In almost all
instances, the jury awarded six or seven figures in damages.[26]
Most of the remaining verdicts were reached decades ago, when the
value of a dollar was significantly higher.[27]  See Jennings v.

---

[25]    Defendants' argument -- that other verdicts are dispositive of this one
-- if taken to its logical conclusion, would effectively restrict juries to a
range of damages awards, clustered around the average of previous awards.
This, of course, is not the law.  See Lewis, 689 F. Supp. 2d at 430.

[26]    See Doe v. Hyassat, No. 18 Civ. 6110 (PGG) (OTW), 2024 U.S. Dist. LEXIS
67482 (S.D.N.Y. April 11, 2024) ($1,250,000 award); Villalta v. JS Barkats,
P.L.L.C., No. 16 Civ. 2772 (RAR) (WL), 2021 WL 2458699 (S.D.N.Y. Apr. 16, 2021),
report and recommendation adopted, No. 16 Civ. 2772 (RA), 2021 WL 2458023
(S.D.N.Y. June 16, 2021) ($350,000 in compensatory damages for emotional harm);
Noonan v. Becker, No. 14 Civ. 4084 (LTS)(JLC), 2018 U.S. Dist. LEXIS 60704
(S.D.N.Y. April 10, 2018) ($1,013,0000 compensatory damages); Feldman v. Knack,
170 A.D.3d 667 (2d Dep't 2019) ($450,000 in compensatory damages); Doe v.
Alsaud, 2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. Oct. 10, 2017) ($1,250,000 in
compensatory damages); Schneider v. National R.R. Passenger Corp., 987 F.2d 132
(2d Cir. 1993) ($1,750,000 award); Doe v. Warren, No. 13 Civ. 571, 2024 U.S.
Dist. LEXIS 106767, *28-29 (S.D.N.Y. 2024)($500,000 in compensatory damages).

[27]    See Dupree v. Guigliano, 87 A.D.3d 975 (2d Dep't 2011); Camacho v.
Rochester City Sch. Dist., 20 A.D.3d 916 (4th Dep't 2005); Schneider v. National

Yurkiw, 18 F.4th 383, 393 n.7. (2d Cir. 2021) (explaining that "we do not believe that the . . . award against [defendants] warrants remittitur" after "accounting for inflation").

The Hotel endeavors to distinguish the recent multi-million-dollar award to E. Jean Carroll, the plaintiff in several highly publicized sexual assault cases in this district.  See Reply at 7-9; see also Opp. at 19.  While the Carroll cases did involve claims of defamation, see Reply at 7, the trial court confirmed, and the Second Circuit upheld, a damages award for the assault on Ms. Carroll in the mid-1990s.  Carroll v. Trump, 683 F. Supp. 3d 302, 327 (S.D.N.Y. 2023), aff'd, 124 F.4th 140 (2d Cir. 2024) (upholding a $2 million compensatory damages award for the sexual assault specifically).  In Carroll, the jury found that the defendant "deliberately and forcibly penetrated [plaintiff's] vagina with his fingers."  124 F.4th at 153.  That fact pattern is remarkably similar to this case, where Astakhov "digital[ly] penetrat[ed] . . . plaintiff's vagina."  Mot. at 20.  If anything, the assault on Ms. Betts was more terrifying, given that she was unclothed and isolated in a hotel room at the time of her assault.[28]

---

R.R. Passenger Corp., 987 F.2d 132 (2d Cir. 1993); Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52 (2d Dep't 1990).

[28]    The Hotel protests that the Second Circuit only explicitly employed the 5501(c) standard to analyze a separate defamation verdict, see Carroll v. Trump, 151 F.4th 50, 80 (2d Cir. 2025), and only "the trial court . . . reviewed the sexual assault award under CPLR 5501(c)," Reply at 7-9 (citing Carroll, 683 F. Supp. 3d at 328) (emphasis added).  However, all CPLR 5501(c) requires is that

The Hotel's efforts to minimize plaintiff's injuries because she had pre-existing psychological conditions or received massages subsequent to her assault[29] are also unavailing.  Mot. at 20.  The jury was well-aware of plaintiff's psychological history and heard this testimony, as well as other evidence that plaintiff suffered additional and distinct harms as a direct result of her assault.  See, e.g., Trial Tr. at 56:11-15 (Dr. Otonichar testified that plaintiff suffered heightened and additional symptoms of PTSD, including "symptoms that are different in that they are related to the content of the sexual assault" such as "flashbacks of the reported assailant's face [and] nightmares that involved themes of sexual trauma and violence.").  Given this evidence, the verdict was more than reasonable, and there is no cognizable basis to intrude on the jury's factfinding role.

### c. Plaintiff's Counsel's Summation

Next, we turn to the Hotel's argument that a series of supposedly prejudicial comments made by plaintiff's counsel during

---

the Court "compare[] the award to other New York cases." Rangolan, 370 F.3d at 244 (emphasis added).  Moreover, the district court opinion, including the portion concerning the sexual assault damages, was affirmed by the Second Circuit.  See Carroll, 124 F.4th at 150.  An appellate court need not explicitly opine on every portion of the lower court decision in its affirmance.

[29]    Plaintiff testified that she received two massages at different hotels on unspecified dates after her January 2021 deposition, almost three years after her assault by Astakhov.  See Mot. at 21 (citing Trial Tr. at 156); see also Trial Tr. at 156:12-158:13.

his summation warrant "a new trial or additional remittitur." Mot. at 22-23. We will discuss each of these comments in order.

First, plaintiff's counsel's statement that the Hotel's expert was a "hired gun," Mot. at 22, is not a ground for vacatur, because parties are free to inquire about an opposing expert's compensation. Indeed, Rule 26(a)(2)(B)(vi) requires an expert to disclose their compensation, and it is well-established that "examining a[n] [expert] witness's compensation in an effort to impeach for bias is permissible." Cary Oil Co. v. MG Ref. & Mktg., Inc., 257 F. Supp. 2d 751, 757 (S.D.N.Y. 2003); see also LNC Inv., Inc. and Charter Nat'l Life Ins. Co. v. First Fid. Bank, No. 92 Civ. 7584 (CSH), 2000 WL 1182772, at *2 (S.D.N.Y. Aug.21, 2000) ("[Litigants] are entitled to very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him."). Although the Hotel's cited case found counsel's "hired gun" comment "unbecoming," it also stated that in most cases "these improper remarks probably would have been attributed to excessive zeal and forgiven as harmless." Steidel v. County of Nassau, 182 A.D.2d 809, 814 (2d Dep't 1992).

Second, plaintiff's counsel's urging of a "gargantious" award was non-prejudicial. Mot. at 23 (citing Trial Tr. at 332:8). "[A]ttorneys are generally afforded latitude in formulating their

arguments" and "[n]ot every improper or poorly supported remark in summation warrants a new trial." Clark v. Westchester Cnty., No. 96 Civ. 8381 (DLC), 1998 WL 709834, at *8 (S.D.N.Y. Oct. 9, 1998) (citation and internal quotation marks omitted). Indeed, plaintiff's counsel was no doubt inspired to create such language because the Court had precluded counsel from mentioning a specific number. Trial Tr. at 332:12-14 ("[Plaintiff's] Counsel is not allowed . . . to mention a [specific] number to you"); see also Nunez v. Diedrick, No. 14 Civ. 4182 (RJS), 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) ("the Second Circuit has . . . expressed its 'disfavor' of 'specifying target amounts for the jury to award' and has 'encourage[d]' district judges to 'bar' plaintiffs from doing so in light of the strong likelihood of unfair prejudice.") (quoting Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), as amended (Dec. 22, 1995), vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp., 518 U.S. 1031 (1996)). Having received the benefit of the Court's instruction barring mention of a specific number, the Hotel cannot now claim prejudice arising from plaintiff's counsel's use of a non-specific adjective.

Third, there is no prejudice resulting from plaintiff's counsel's "vouch[ing] for the credibility of [a] non-testifying witness," Mot. at 23, because the Court immediately and

unequivocally upheld defense counsel's objection. <u>See</u> Trial Tr. at 334:12-15 ("MR. SOBEL: [Plaintiff's counsel is] vouching for witnesses that weren't called. THE COURT: You[, plaintiff's counsel,] cannot vouch."). This cured any potential prejudice. <u>See</u> <u>United States v. Shareef</u>, 190 F.3d 71, 79 (2d Cir. 1999) ("[A]lthough . . . [counsel's] summation [comments] were improper . . . these transgressions were isolated; the trial court upheld [defendant's] objections[.]").

Lastly, there was no prejudice from plaintiff's counsel's improper suggestion that the jury "conduct[] independent internet research." Mot. at 23. The Court had given a preliminary instruction to the jury not to conduct internet research, <u>see</u> Trial Tr. at 6:10-13, and immediately upheld defense counsel's objection when plaintiff's counsel subsequently asked the jury to do so, <u>id.</u> at 359:3-6, 359:10-13 ("The Court: [The Jury] are specifically instructed not to do research on their own. That rule applies to [plaintiff counsel's] comments. You[, plaintiff's counsel,] do not put in evidence or claim that they can go on Google and do something."). This cured any potential prejudice. <u>Shareef</u>, 190 F.3d at 79.

### d. Evidentiary Rulings at Trial

Finally, we address the Hotel's challenge to several evidentiary rulings made by the Court during the trial. <u>See</u> Mot. at 23-25. We will consider each objection in order.

#### i.   Dr. Fayer

The Hotel argues that the Court erred by denying it permission to read portions of the deposition testimony of Dr. Steven Fayer, a non-testifying expert psychiatrist engaged by plaintiff, into the record. Mot. at 23-24. Specifically, the Hotel contends that Dr. Fayer's deposition testimony is a "statement by a party opponent" under Federal Rule of Evidence 801(d)(2)(C), because Dr. Fayer was "an opposing party . . . whom [plaintiff] authorized to make a statement" on behalf of plaintiff.[30]   Mot. at 23-24. The Hotel advances this argument without any recognition of, or effort to distinguish, clear authority to the contrary.

---

[30]    The Court previously denied the Hotel's application at trial, when the Hotel brought it under Federal Rule of Civil Procedure 32(a)(3) (Deposition of Party, Agent, or Designee). <u>See</u> Trial Tr. at 95:24-96:8 ("The Court: Mr. Sobel was, as he told me, relying on Rule 32(a)(3). So the record is clear, [Rule 32(a)(3)] reads as follows: An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4). The expert is not a 30(b)(6) witness, nor is the expert a 31(a)(4) witness, which involves depositions on written questions, for a public or private corporation, partnership, or government agency."). Defense counsel also cited to Rule 801(d) at trial, <u>see</u> <u>id.</u> at 45:19-20, and the Court initially rejected defendants' argument due to a lack of supporting caselaw at 96:15-20. Defense counsel promised to "brief [the Rule 801 issue] for [the Court]," <u>id.</u> at 96:21-22, but waived the argument by failing to do so by the end of trial. Nevertheless, the Court will, for the avoidance of doubt, address the Rule 801 argument here.

> [D]espite the fact that one party retained and paid for
> the services of an expert witness, expert witnesses are
> supposed to testify impartially in the sphere of their
> expertise. . . . Rule 801(d)(2)[(C)] requires that the
> declarant be an agent of the party-opponent against whom
> the admission is offered, and this precludes the
> admission of the prior testimony of an expert witness
> where, as normally will be the case, the expert has not
> agreed to be subject to the client's control in giving
> his or her testimony.
> . . .
>
> Because an expert witness is charged with the duty of
> giving his or her expert opinion regarding the matter
> before the court, we fail to comprehend how an expert
> witness, who is not an agent of the party who called
> him, can be authorized to make an admission for that
> party.

Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., No. 11 Civ.
6201 (DLC), 2015 WL 539489, at *10 (S.D.N.Y. Feb. 10, 2015)
(quoting Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir.
1995)); see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,
No. 12 Civ. 7372 (LJL), 2020 WL 5518146, at *4 n.6 (S.D.N.Y. Sept.
14, 2020) ("[Defendant] originally stated its intent to call
Francis A. Longstaff as an expert witness, but withdrew him midway
through trial. [Plaintiff] offered excerpts from Longstaff's
deposition" and "[t]he Court excluded that testimony" because "the
deposition testimony is classic hearsay and does not constitute
the admission of a party opponent[.]") (emphasis added); Fordec
Realty Corp. v. Travelers Excess & Surplus Lines Co., No. 18 Civ.
85 (ALC) (KNF), 2020 WL 6530889, at *4 (S.D.N.Y. Aug. 3, 2020)
("Since . . . experts are not authorized to make statements on the

[party's] behalf, Rule 801(d)(2)(C) is inapplicable.") (internal quotation marks omitted), <u>report and recommendation adopted,</u> No. 18 Civ. 00085 (ALC), 2020 WL 5759021 (S.D.N.Y. Sept. 28, 2020).

Dr. Fayer was not a "party opponent" because he was neither "authorized" to make a statement on plaintiff's behalf, Fed. R. Evid. 801(d)(2)(C), nor an "agent," Fed. R. Evid. 801(d)(2)(D), and thus his deposition testimony was properly excluded.[31] Moreover, the Hotel's claim of prejudice lacks any credibility, given that the Hotel moved before trial to <u>preclude</u> Dr. Fayer from testifying at all. <u>See</u> ECF No. 179 at 17-19 (denying defendants motion to exclude Dr. Fayer under Rule 702(b)-(d)).

### ii. Dr. Reff

The Hotel next argues that the Court erred in refusing to grant a missing witness charge for Dr. Robert Reff, a non-

---

[31] The Hotel's cited cases are not to the contrary. In <u>Glendale Fed. Bank, FSB v. United States</u> the court held that "[w]here an expert witness is withdrawn prior to trial . . . the prior deposition testimony of that witness may not be used." 39 Fed. Cl. 422, 425 (1997); <u>see also</u> Opp. at 25. The Hotel responds that Dr. Fayer was never formally withdrawn as a witness prior to trial, and that plaintiff "conflate[s] the passive act of not calling an expert witness with the affirmative act of withdrawing that witness." Reply at 11-12. The Court is aware of no authority demonstrating this distinction is relevant, especially given that defense counsel was aware Dr. Fayer would not be called. <u>See</u> Trial Tr. at 15:3-4 ("MR. SOBEL: [Plaintiff] also retained a Dr. Fayer who is not going to be called."). Similarly, in <u>Walker v. City of Buffalo</u>, the court was deciding on a motion where the expert was "<u>currently</u> identified as a testifying expert witness for the County in the trial set to begin on March 18, 2025," No. 22 Civ. 520 (MAV), 2025 WL 828242, at *20 (W.D.N.Y. Mar. 17, 2025) (emphasis added), and explicitly declined to rule on the scenario "if the County withdrew . . . it[]s expert" because "[t]hat circumstance is not presently before the Court," <u>id.</u> at *21 n.12.

testifying treating psychiatrist for Ms. Betts.  Mot. at 24-25;
see also ECF No. 188 at 4.  To start, Dr. Reff was never listed as
a trial witness.  ECF No. 188 at 1.  The Hotel insists that because
Dr. Otonichar, plaintiff's testifying expert, "only reviewed
plaintiff's medical records[, including records produced by Dr.
Reff,] through January 10, 2024," and did not review Dr. Reff's
subsequent records, Dr. Reff's testimony was essential.  Mot. at
24; see also ECF No. 188.  Dr. Reff, the Hotel urges, "was the
only medical witness who could speak to plaintiff's condition for
the eighteen-month period preceding the trial," and his absence
warranted an "adverse inference."  Mot. at 24.

It is well-established that "[w]hether a missing witness
charge should be given lies in the sound discretion of the trial
court."  United States v. Torres, 845 F.2d 1165, 1170 (2d Cir.
1988).  Even where an important prospective witness is absent, it
is appropriate for a "judge [to] refrain[] from commenting on the
inference to be drawn . . . and allow[] counsel instead to argue
the inference."  United States v. Saa, 859 F.2d 1067, 1076 (2d
Cir. 1988) (citation and internal quotation marks omitted).  Here,
the Court permitted defense counsel to ask the jury to draw an
inference from Dr. Reff's absence.  See Trial Tr. at 313:25-314:4
("MR. SOBEL:  It was plaintiff's conscious choice not to bring the
doctors who know her best[.] . . . [N]either Dr. Reff, nor Dr.

Wilson[, a treating addiction specialist,] came [be]for[e] you."). Moreover, defendants' observation that "[u]nlike Dr. Otonichar, Dr. Medlin's review included . . . records from Dr. Reff through June, 2025," militates <u>against</u> any finding of prejudice.  Mot. at 7; <u>see also id.</u> at 24-25.  It is evident from the trial record that the defense counsel viewed Dr. Reff's absence as bolstering his client's case, because Dr. Medlin was free to opine on Dr. Reff's most recent records <u>without fear of contradiction</u> by either Dr. Otonichar or Dr. Reff himself.[32]

Lastly, Dr. Reff's live testimony would have been cumulative because his full records were admitted without objection into evidence.  Trial Tr. at 48:2-6, 105:21-23; <u>see also</u> <u>Cuevas v. St. Luke's Roosevelt Hosp. Ctr.</u>, 95 A.D.3d 580, 580-81 (1st Dep't 2012) ("The trial court properly refused . . . a missing witness charge [because] [t]he physician's notes and records had been entered into evidence by stipulation.").

**<u>Conclusion</u>**[33]

---

[32]    Trial Tr. at 315:9-22 ("MR. SOBEL: . . . I'd like to contrast [Dr. Otonichar's review] with Dr. Medlin . . . [who] reviewed every single record up until June 25th, of 2025 just a couple weeks ago."); <u>see also</u> <u>id.</u> at 176:1-7.

[33]    The Court is aware that defendants requested oral argument.  <u>See</u> Mot. at 1.  However, given that our decision is based on clear legal doctrine, and given the Court's familiarity with the case and trial record, the Court determined that oral argument would not be productive.

For the preceding reasons, defendants' motion to vacate the Court's summary judgment decision, to alter or amend the jury's trial verdict, or for a new trial on liability and/or damages, is denied in its entirety.  Plaintiff's waived motion for additur, to the extent that it may be considered a motion at all, is also denied.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 217 and 222.

**SO ORDERED.**

Dated:    November 24, 2025
          New York, New York

_____
      NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

33